LOCAL 232, ALLIED INDUSTRIAL WORKERS OF AMERICA, AFL–CIO, Plaintiff–Appellee, Cross–Appellant,

v.

BRIGGS & STRATTON CORPORA-TION, Defendant–Appellant, Cross–Appellee.

Nos. 87–1318, 87–1376.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1987.
Decided Jan. 19, 1988.

Fred G. Groiss, Quarles & Brady, Milwaukee, Wis., for plaintiff-appellee, cross-appellant.

Kenneth R. Loebel, Habush, Habush & Davis, S.C., Milwaukee, Wis., for defendant-appellant, cross-appellee.

Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Local 232, Allied Industrial Workers of America, AFL–CIO ("Local 232") filed suit to compel Briggs & Stratton Corporation ("Briggs & Stratton") to submit a grievance to arbitration. In the grievance, Local 232 alleged that certain unilateral changes the company made to the Briggs & Stratton Retirement Plan violated the parties' collective bargaining agreement. Local 232 also sought to recover attorneys' fees. The district court granted Local 232's motion for summary judgment and ordered Briggs & Stratton to submit to arbitration, but denied, without explanation, the union's motion for attorneys' fees. We affirm.

## I.

The Briggs & Stratton Retirement Plan ("the retirement plan") is a non-contributory defined benefit retirement plan that covers both Briggs & Stratton's union and non-union employees. In 1986 Briggs & Stratton unilaterally amended the plan to improve the benefits to be received by certain non-union employees. These changes were intended to make the company's retirement benefits competitive with those provided by other companies and to encourage early retirement. The amendments to the retirement plan did not alter the level of benefits received by union employees under the plan.

Local 232, which represents a unit of Briggs & Stratton's employees, filed a grievance ("Grievance 19167") alleging that the unilateral changes made by Briggs & Stratton to the retirement plan violated the collective bargaining agreement that was in effect between the parties at the time ("the 1983 agreement"). Article XII, § 5(d) of the 1983 agreement states:

> the existing Retirement Plan as amended by this agreement will be maintained during the term of this agreement.

Briggs & Stratton refused to process the grievance, arguing that the changes only affected employees who were not represented by the union and therefore the changes were not governed by the collective bargaining agreement. Local 232 claimed that the company had failed to maintain the plan and that the dispute should be resolved through the grievance process established by the 1983 agreement, including binding arbitration. Article IV, § 2 of the 1983 agreement ("the arbitration clause") states, in relevant part, that "all grievances between the two parties shall be deemed arbitrable."

Local 232 filed a complaint in federal district court seeking to compel the company to submit the grievance to arbitration. The union also sought reasonable attorneys' fees under Rule 11 of the Federal Rules of Civil Procedure and § 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a). Both parties moved for summary judgment. The district court granted the union's motion for summary judgment and ordered the company to submit to arbitration. The district court then denied the union's motion for attorneys' fees without explanation. Both parties appealed. Briggs & Stratton seeks to have the order compelling them to arbitrate Grievance 19167 reversed. Local 232 appeals the denial of attorneys' fees arguing that the district court abused its discretion when it rejected the union's Rule 11 and § 301 claims without setting forth its reasoning.

## II.

### A.

The principles governing whether a dispute between a union and a company is subject to arbitration under a collective bargaining agreement are well established, see United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (collectively "the Steelworkers Trilogy"), and have recently been re-affirmed. AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The use of arbitration as a method to resolve disagreements is a matter of contract. Arbitrators only have authority to resolve disputes between parties who have previously agreed to submit such disputes to arbitration. Warrior & Gulf, 363 U.S. at 582, 80 S.Ct. at 1353.

Determining whether parties have agreed to submit a particular dispute to arbitration is a question to be decided by the judiciary, not the arbitrator. AT & T Technologies, 106 S.Ct. at 1420. In making this determination a court is guided by established principles. If the parties have entered into a collective bargaining agreement which contains an arbitration clause, there is a presumption of arbitrability. Any dispute between the parties should be submitted to arbitration "unless it may be said with positive assurance that the arbi-

tration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353 (footnote omitted). The presumption of arbitrability "furthers the national labor policy of peaceful resolution of labor disputes" and takes advantage of the greater institutional competence of arbitrators. *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1849, 80 L.Ed.2d 366 (1984).

A court does not consider the merits of the underlying grievance in deciding whether a dispute is arbitrable. *AT & T Technologies, Inc.,* 106 S.Ct. at 1419. "The judicial inquiry ... must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance...." *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353. Frivolous as well as meritorious disputes may be submitted to an arbitrator.

> The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values.

> .     .     .     .     .

*American Mfg. Co.,* 363 U.S. at 568, 80 S.Ct. at 1346 (footnotes omitted).

### B.

Briggs & Stratton acknowledges that *Warrior & Gulf* established a presumption of arbitrability, but argues that the presumption is not relevant in determining the proper forum in which to resolve Grievance 19167. The arbitration clause in the 1983 agreement, which provides that "all grievances between the two parties shall be deemed arbitrable," is very broad. The company seeks to avoid arbitration by arguing that Grievance 19167 is not a "grievance" as that term is used in the arbitration clause. Briggs & Stratton does not attempt to conclusively define "grievance," but does explain why in its view Grievance 19167 cannot fall within the definition (whatever it may be). The company argues that the amendments to the Briggs & Stratton Retirement Plan only increase the level of benefits received by salaried employees and have no effect upon the employees that Local 232 represents. Briggs & Stratton then argues that neither the company nor the union ever contemplated arbitrating disputes over changes in the company's treatment of non-union employees and therefore Grievance 19167 is not a "grievance" subject to arbitration.

We believe that Briggs & Stratton's focus on whether the present dispute between it and the union is or is not a "grievance" merely recasts an old question in a new manner. Regardless of whether Grievance 19167 is labelled a "grievance," "dispute" or "complaint," Briggs & Stratton's real argument is that the parties never contemplated nor intended to have changes to the retirement plan affecting only non-union employees covered by the collective bargaining agreement or subject to arbitration.[1] Whether or not a dispute is arbitrable under the terms of the applicable collective bargaining agreement is a familiar issue whose resolution, as previously noted, is governed by the principles of the *Steelworkers Trilogy.*

Article IV, § 2 of the 1983 agreement is a general arbitration clause. It provides, in part, that "all grievances between the two parties shall be deemed arbitrable." The presumption of arbitrability therefore applies. Accordingly, the dispute over the retirement plan amendments must be submitted to arbitration unless we can say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1353. The district court concluded that

---

1. Briggs & Stratton understood this, as their brief indicates: "The central issue, then, is did the parties agree in their labor contract to submit a complaint such as that set forth in Grievance No. 19167 to final and binding arbitration?" Appellant's Brief at 9.

given the broad language of the arbitration clause, it could not say "with positive assurance" that the clause could not be construed to cover Grievance 19167.

■ When an arbitration clause is broad in scope, as this clause is, the presumption of arbitrability can be overcome in only two very limited sets of circumstances. *See id.* at 584–85, 80 S.Ct. at 1354. First, because the arbitrator's authority derives from a contract to submit disputes to arbitration, the parties may expressly exclude specific issues from arbitration in the collective bargaining agreement. *Id.* Briggs & Stratton, however, concedes that none of the express exceptions to arbitrability in the 1983 agreement apply to Grievance 19167.[2]

Second, if no express exception applies, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* at 585, 80 S.Ct. at 1354. We do not believe that Briggs & Stratton has established such forceful evidence. Briggs & Stratton argues that nothing in the 1983 agreement or the collective bargaining history of the union and the company indicates that company action which affects only non-union employees is to be submitted to arbitration. We first point out that Briggs & Stratton's reasoning assumes away one of the underlying issues in dispute. Local 232 apparently believes that the increased level of benefits being paid to retiring salaried employees diminishes the pool of assets in the plan and increases the possibility that union employees will not receive the retirement benefits they were promised. Local 232 therefore argues that the amendments do adversely effect its members and that the changes violate Briggs & Stratton's duty to maintain the plan during the term of the 1983 agreement.

Even if Briggs & Stratton is correct and the plan amendments do not affect the employees represented by Local 232, the company still may have violated the collective bargaining agreement. Briggs &

Stratton's argument that the parties never contemplated arbitrating disputes that affected only non-union employees is contradicted by the plain language of Article XII, § 5(d) of the collective bargaining agreement. Article XII, § 5(d) states that "the existing Retirement Plan ... will be maintained during the term of this agreement." The "existing Retirement Plan" covers both union and non-union employees. It does not distinguish between these two categories. In other words, Article XII, § 5(d) does not say that the retirement plan will be maintained as *to union employees*. Changes that affect only non-union employees arguably constitute a failure to maintain the plan. To resolve this issue would require us to construe the term "maintained" and would lead us into the merits of the dispute. The Supreme Court's statement in *Warrior & Gulf* seems particularly applicable:

> Since any attempt by a court to infer ... a purpose [to exclude a claim from arbitration] necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

*Id.*

## C.

■ We have recently stated that the "mere mentioning of the Retirement Plan in the General [collective bargaining] Agreement is insufficient reason to construe the Retirement Plan as part and parcel of the General Agreement." *Printing Specialties and Paper Products Union Local 680 v. Nabisco Brands, Inc.,* 833 F.2d 102, 105 (7th Cir.1987) (*quoting RCA Corp. v. Local 241, Int'l Fed'n of Professional & Technical Eng'rs,* 700 F.2d 921,

---

**2.** Some of the cases Briggs & Stratton relies on to support its position involve disputes which were explicitly excluded from arbitration by the collective bargaining agreement. *See, e.g., International Assoc. of Machinists and Aerospace*

*Workers, Lodge 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219 (5th Cir.1987). Such cases do not help Briggs & Stratton because the 1983 agreement does not contain an express exception which applies to Grievance 19167.

927 (3d Cir.1983)). In *Nabisco* we held that certain disputes over pension benefits provided under a pension plan that covered both union and non-union employees were not arbitrable under the company's collective bargaining agreement. The arbitration clause in *Nabisco* required arbitration for "any grievance or misunderstanding involving wages, hours, or working conditions." In addition, the collective bargaining agreement required Nabisco "to continue its present pension plan in full force and effect for the term of the agreement." The underlying dispute was whether employees who worked at a plant that was sold, but who were offered employment by the company purchasing the plant, were entitled to special early retirement benefits under a "job termination" clause in the pension plan.

In *Nabisco*, as in the present case, the presumption of arbitrability applied, but in *Nabisco* we concluded that there was forceful evidence which demonstrated that Nabisco and the union never intended to have the arbitration clause cover the specific issue in dispute. We relied on essentially three factors in reaching that conclusion. First, the collective bargaining agreement did not incorporate the provisions of the pension plan, rather it only required Nabisco "to continue ... [the plan] in full force and effect." Second, the pension plan itself established its own procedure for resolving disputes concerning the benefits provided under the plan. Finally, the pension plan was established before the employees who were involved in the dispute were even organized, and there was no indication that any specific terms of the pension plan were included in the collective bargaining agreement through negotiation. We did not, however, read Nabisco's obligation under the collective bargaining agreement "to continue" the pension plan to be meaningless. Specifically, we stated:

> Had Nabisco failed to fulfill an obligation under the collective bargaining agreement which abrogated the full force and effect of the Pension Plan, such as fail-

ing to fund the Plan adequately or eliminating the Plan altogether, the result would have been different.

*Nabisco*, 833 F.2d at 105.

Some of the factors found to constitute "forceful evidence" of an intention not to arbitrate in *Nabisco* also exist in the dispute between Briggs & Stratton and Local 232 over Grievance 19167. Like the agreement in *Nabisco*, the 1983 agreement does not incorporate the terms of the retirement plan and only requires Briggs & Stratton to maintain the plan. In addition, the provision requiring Briggs & Stratton to maintain the plan was part of prior collective bargaining agreements between the parties long before the parties adopted arbitration as the principal means of resolving their disputes.[3]

Despite these similarities, we believe that Grievance 19167 is distinguishable from the dispute in *Nabisco*. The critical distinction relates to the underlying issue in dispute in each case. In *Nabisco* the pension plan itself was not altered by the sale of one of Nabisco's plants. Rather the issue was whether under the terms of the pension plan a "job termination" had occurred such that the employees of the plant that was sold were entitled to special benefits. We concluded that the parties had agreed to arbitrate disputes over whether Nabisco had continued the plan in full force and effect, but not claims relating to the definition of the specific terms used in the pension plan.

Briggs & Stratton and the union have also agreed to arbitrate disputes over whether Briggs & Stratton has "maintained" the retirement plan, but in contrast to *Nabisco*, Briggs & Stratton actually altered the terms of the retirement plan. In other words, Local 232's grievance actually focuses on the one aspect of the retirement plan that is specifically addressed in the collective bargaining agreement—maintaining the plan. In *Nabisco* we spoke of relatively drastic action—failing to fund the plan or terminating the plan—as exam-

---

3. Briggs & Stratton states that "Article XII, section 5(d) has been part of the collective bargaining agreement since at least 1950," but that arbitration was not made part of the collective bargaining agreement until August 1, 1970. Appellant's Brief at 5.

ples of what would constitute a failure "to continue" the plan under the collective bargaining agreement. Briggs & Stratton's amendments to the retirement plan are not identical to these examples, yet the changes arguably still constitute a failure to maintain the plan. Once again resolution of the issue requires an interpretation of the term "maintained" as used in the 1983 agreement and involves the merits of the dispute. Resolution of this issue is not our task. The district court's order that Grievance 19167 be submitted to arbitration is affirmed.

### III.

The second issue is Local 232's claim for sanctions under Rule 11 of the Federal Rules of Civil Procedure and § 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a). Local 232 argues that Briggs & Stratton's reasons for refusing to arbitrate were frivolous and therefore seeks to recover the attorneys' fees related to obtaining the order compelling Briggs & Stratton to submit to arbitration. The district court denied Local 232's motion for attorneys' fees without explanation.

### A.

Rule 11 provides in part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

Two significant Rule 11 decisions have been decided since Judge Reynolds denied Local 232's request for attorneys' fees. See Brown v. Federation of State Medical Boards of the United States, 830 F.2d 1429 (7th Cir.1987) and Szabo Food Service, Inc.

v. Canteen Corp., 823 F.2d 1073 (7th Cir. 1987). In Brown the district court awarded substantial attorneys' fees under Rule 11 and we concluded that in such situations a district judge must "state with some specificity the reasons for the imposition of a sanction, and the manner in which the sanction was computed." Brown, 830 F.2d at 1438.

Szabo addressed the other half of the equation, the situation where a district court denies a motion for Rule 11 sanctions. In Szabo the defendant, Canteen Corporation, alleged that the due process and racial discrimination theories relied on by the plaintiff, Szabo Foods, to form the predicate for federal jurisdiction were frivolous. Canteen therefore sought sanctions under Rule 11. The district court denied the motion for sanctions without any meaningful discussion. We reversed the district court's denial of sanctions relating to the due process claim and remanded for a determination of the appropriate sanction. We also remanded the district court's denial of sanctions relating to the discrimination theory for a clear explanation of the district court's reasoning. We did not, however, adopt a rule that would require a district court to give explanations in all cases where it denies a motion for sanctions. Specifically, we stated:

We do not now join the Fifth Circuit in requiring judges to make findings and give explanations every time a party seeks sanctions under Rule 11. Sometimes the reason for decision is obvious. When the motion for sanctions is foolish, or when the reasons for denying a colorable motion are apparent on the record, the judge need not belabor the obvious.

Szabo, 823 F.2d at 1084 (citation omitted).

Although we welcome a district court judge's explanation every time a Rule 11 motion is decided, we believe that the language quoted from Szabo controls the present matter and the district court's failure to explain why it denied Local 232's motion was not an abuse of discretion. Local 232 offered a colorable motion for Rule 11 sanctions but the reasons for its denial are apparent on the record; as demonstrat-

ed by our decision in *Nabisco*, Briggs & Stratton's reasons for refusing to submit Grievance 19167 to arbitration were not frivolous. We therefore affirm the district court's denial of Local 232's motion for Rule 11 sanctions.[4]

### B.

■ Local 232 also seeks to recover attorneys' fees under § 301 of the Labor Management Relations Act. In *Miller Brewing Co. v. Brewery Workers Local Union No. 9*, 739 F.2d 1159 (7th Cir.1984) we discussed the standard governing the award of attorneys' fees under § 301.

> Normally when no statute authorizes the award of attorney's fees in a particular class of cases—and none does with respect to suits under § 301 of the Taft–Hartley Act or § 9 of the Arbitration Act—the prevailing party is entitled to attorney's fees only if his opponent's suit or defense was frivolous, which our cases define to mean brought in bad faith—brought to harass rather than to win.

*Id.* at 1167 (citations omitted). In *District No. 8, Int'l Assoc. of Machinists & Aerospace Workers v. Clearing, Inc.*, 807 F.2d 618, 622 (7th Cir.1986), we found it "unnecessary to disturb the settled law of the circuit" on this issue. We re-affirm that position today. Briggs & Stratton did not resist arbitration in bad faith; it did so because it did not believe Grievance 19167 was covered by the collective bargaining agreement and, as we have previously determined, this claim was not frivolous.[5] We therefore affirm the district court's denial of attorneys' fees under § 301.

---

4. For these same reasons we also deny Local 232's request for attorneys' fees related to this appeal.

5. Rule 11 involves both an objective standard and a subjective standard. *See Brown*, 830 F.2d at 1435–36. The objective standard requires the individual to make a reasonable inquiry into both the facts and the law. The subjective standard prohibits a motion, pleading, or other paper from being interposed for an improper purpose. In this case, our affirmance of the district court's denial of Rule 11 sanctions involves a determination that Briggs & Stratton did not resist arbitration in bad faith. Accordingly, this determination also disposes of the motion for fees under § 301.