# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3639

_____

| | | |
|---|---|---|
| Crown Cork & Seal Company, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| International Association of Machinists | * | |
| and Aerospace Workers, The AFL-CIO; | * | |
| Alvin L. McColley; Leroy Kirchner; | * | |
| Steven Anderson, Individually and as | * | |
| representatives of a defendant class | * | |
| of retirees, | * | |
| | * | Appeal from the United States |
| Defendants - Appellees, | * | District Court for the |
| | * | District of Nebraska. |
| ---------------------------------- | * | |
| | * | |
| International Association of | * | |
| Machinists and Aerospace Workers, | * | |
| The AFL-CIO, | * | |
| | * | |
| Counter Claimant - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Crown Cork & Seal Company, Inc., | * | |
| | * | |
| Counter Defendant - Appellant. | * | |

_____

Submitted: April 12, 2007
Filed: September 18, 2007

_____

Before MELLOY, BOWMAN, and GRUENDER, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Crown Cork and Seal Company appeals from the District Court's orders dismissing Crown's declaratory judgment claims brought under the Employee Retirement Income Security Act (ERISA) and the Labor Management Relations Act (LMRA) and granting summary judgment to the International Association of Machinists and Aerospace Workers (IAM or the Union) on its counterclaim seeking to compel arbitration under LMRA. We reverse the summary judgment and dismiss the remaining issues on appeal.

In 1990, Crown, a manufacturer of packaging materials, acquired the metal division of Continental Can Company and that division's manufacturing plants. Over the preceding years, Continental and IAM had negotiated successive collectively bargained Master Agreements covering the employment relationship between Continental and its hourly employees. Crown has since bargained with IAM at the represented facilities. Pursuant to the Master Agreements, Crown committed to provide certain health benefits to eligible retirees.

In 2003, Crown announced its unilateral decision to modify the retiree health plans for all those employees who retired before April 1, 2002. (Those who retired after that date were covered by a different health plan.) The changes, effective August 1, 2003, included premium sharing, increased deductibles and out-of-pocket limits,

decreased coverage for hospitalization, elimination of coverage for some dependents, and increases to lifetime benefits.

On June 6, 2003, before the effective date of the modifications, Crown filed suit in the District Court seeking declaratory relief in two counts. Count One was brought against IAM under LMRA, 29 U.S.C. § 185(a), seeking a declaration that Crown's unilateral modification of the retiree health plans did not violate the relevant Master Agreements. Count Two was brought under ERISA, 29 U.S.C. § 1132(a)(3), against IAM and a class represented by three named retirees and sought a declaration that the health plans could be modified as proposed without violating ERISA.

On July 1, 2003, IAM filed a grievance under the Master Agreements to protest the changes to the retiree health plans. Crown refused to arbitrate the grievance. The Union then moved the District Court to dismiss Crown's claims and filed a counterclaim under LMRA, 29 U.S.C. § 185(a), asking the court to compel arbitration.

On January 20, 2004, the District Court dismissed Crown's ERISA count for failure to state a claim. That dismissal took the named retirees out of the suit. As to Count One, the court exercised its discretion and elected not to assert jurisdiction over the LMRA declaratory judgment claim, dismissing that count as well. See 28 U.S.C. § 2201(a) ("any court . . . *may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)). IAM's arbitration counterclaim remained, and the parties filed cross-motions for summary judgment on a joint stipulation of facts. The District Court (the case had now been reassigned to a different judge) denied both motions, concluding that IAM did not have standing to represent the retirees. The District Court allowed the Union ninety days to amend its counterclaim or to substitute parties to remedy the standing problem and avoid dismissal. IAM then secured the written consent of 653 of 927 eligible retirees (or surviving spouses) to represent them in binding arbitration, after which the parties amended their pleadings and renewed their cross-motions for summary judgment. On

-3-

September 25, 2006, the court granted the Union's motion and denied Crown's and ordered the parties to arbitrate the dispute. Crown appeals both of the dismissals and the summary judgment.

We begin with Crown's challenge to the District Court's summary judgment decision on the arbitrability of the Union's grievance. We review de novo the decision to grant summary judgment. Because the cross-motions were filed on a joint stipulation of facts, the only issue is whether IAM is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

As we have said, Continental and Crown negotiated a series of Master Agreements with IAM over the years that included corresponding health plans for retirees. For reasons not explained in the record, the 1981 health plan, amended in 1988, applied to all Continental retirees when Crown acquired Continental's metal division in 1990, regardless of their retirement dates and notwithstanding that there were any number of Master Agreements and corresponding retiree health plans before 1981. Continental retirees continued to be covered by the 1981 health plan after the acquisition until Crown's unilateral change on August 1, 2003, as did Crown retirees who were represented by IAM postacquisition and who retired by March 31, 1993. The remaining Crown employees who retired before April 1, 2002, received benefits under either the April 30, 1993–April 1, 1999, health plan or the April 1, 1999–April 1, 2002, health plan, depending upon when they retired.[1] The June 1, 2002 (retroactive to April 1, 2002)–June 1, 2005, health plan covered those who retired between those dates. The 2002–2005 Master Agreement is of collateral

---

[1]No one has explained what health plan would have covered any Crown employee who retired between March 31, 1993, and April 30, 1993, but that is of no consequence to the resolution of this appeal.

-4-

relevance to this appeal, as we will explain, but those who retired with the health plan referenced in that Master Agreement are not affected by this case.[2]

The applicable Master Agreements set out a detailed grievance procedure that culminates in binding arbitration of an unresolved grievance, which is defined as "any difference between the Local Management and the Union or employees as to the interpretation or application of, or compliance with, [the Master] Agreement respecting wages, hours, or conditions of employment." 1993 Master Agreement art. 13, sec. 13.1. Crown contends that the Union and Crown (or its predecessor) agreed only to arbitrate disputes between the company and active employees, not retirees who are no longer represented by the Union. We do not disagree with that statement, as far as it goes. "[R]etirees are neither 'employees' nor bargaining unit members." Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 176 (1971). And while there is a presumption of arbitrability in labor disputes if the parties have so agreed, we have concluded that retirees are "outside the collective bargaining relationship." Anderson v. Alpha Portland Indus., 752 F.2d 1293, 1298 (8th Cir.) (holding that retirees were not required to exhaust grievance

_____

[2]A housekeeping note: The material language in the documents we discuss in this appeal, except as otherwise noted, is virtually the same among the relevant versions, with only minor differences that do not affect the substance. For the sake of simplicity and clarity, we will limit our quoting of specific language to the documents entitled Master Agreement Between Crown Cork & Seal Company, Inc. And The International Association of Machinists and Aerospace Workers AFL-CIO April 30, 1993 through March 31, 1996 (hereinafter, 1993 Master Agreement); Benefits for Employees and Their Eligible Dependents Established Pursuant to an Agreement between Crown Cork & Seal Company, Inc. and International Association of Machinists and Aerospace Workers April 30, 1993 (hereinafter, Description of Benefits); and Your Life Insurance and Health Care Benefits During Retirement Established pursuant to the collective Bargaining Agreement between Continental Can Company, USA, Inc. and International Association of Machinists and Aerospace Workers, AFL-CIO Effective April 1, 1981– And as amended August 1, 1988 (hereinafter, Retiree Health Benefits Plan).

procedures before seeking judicial determination of benefits), <u>cert. denied</u>, 471 U.S. 1102 (1985); <u>cf.</u> <u>Allied Chem. & Alkali Workers</u>, 404 U.S. at 181 n.20 (noting that union's representation of retirees in labor negotiations under LMRA is permitted but not mandatory).  In this case, however, a grievance by definition includes a "difference between [Crown] and *the Union . . .* as to the interpretation or application of, or compliance with" the Master Agreements.  With the express consent of most of the retirees, the Union is the party seeking to compel arbitration of the dispute over retiree health benefits, not the retirees themselves.  We conclude that the language of the Master Agreements in this case is sufficient to show that Crown did in fact agree to arbitrate with the Union alone—the entity that has brought the grievance here at issue.

The District Court looked to the 2002–2005 Master Agreement to decide the arbitrability issue because it was the agreement in effect when the Union filed the grievance on behalf of the retirees in 2003.  The court said, "Although prior agreements may be relevant to determine the scope or extent of benefits to which the retirees may be entitled, or the extent to which the company can unilaterally change the benefits, the dispute is premised on the agreement in effect at the time of the filing of the [grievance]."  Mem. & Order of Sept. 25, 2006, at 17.  Because the District Court determined that the dispute arose under the 2002–2005 Master Agreement, the court failed, as the Union concedes, to "expressly analyze the question of whether the parties' dispute is arbitrable under the expired" Master Agreements  (although IAM believes that the court's "analysis of the arbitrability issue necessarily supports (and, indeed, would require) the conclusion that the parties' dispute is arbitrable under the expired contracts"). Br. of Appellees at 14.  The grievance in question arose under the expired Master Agreements, not the 2002–2005 Master Agreement, and it is those expired agreements that must be construed to decide the arbitrability issue.

So we are faced with this question: Should we remand the case to the District Court to analyze the arbitrability issue under the expired Master Agreements?  It is

usually not the function of the appellate court "in the first instance to construe collective-bargaining contracts and arbitration clauses, or to consider any other evidence that might unmistakably demonstrate that a particular grievance was not to be subject to arbitration." AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 651–52 (1986). Crown has suggested remand as a possibility, although not a preference, and the Union is opposed to remand. We believe remand would be inefficient and unnecessary. The parties submitted a joint stipulation of the material facts, the record is complete, and our review of the legal conclusions is de novo in any event. In these circumstances, we believe it is appropriate for us to decide the question of arbitrability under the expired Master Agreements.

Arbitration is a matter of contract, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Crown contends that it did not agree to arbitrate the dispute in question because the Master Agreements under which the dispute arose are no longer in force, and the agreements to arbitrate found therein are likewise expired. But the Supreme Court has explained that it has not held "that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract." Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 251 (1977). The presumption of arbitrability in labor law jurisprudence will survive a terminated contract, such as the expired Master Agreements in this case, where the parties have failed to negate the presumption "expressly or by clear implication." Id. at 255.

The Supreme Court has since instructed, however, that the conclusion of the Court in Nolde Bros. regarding the postexpiration presumption of arbitrability "was limited by the vital qualification that arbitration was of matters and disputes arising out of the relation governed by contract." Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 204 (1991). Otherwise, "parties to a collective-bargaining agreement would

be presumed to intend that any dispute arising between them years or even decades after the expiration of the agreement would be arbitrable." Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc., 795 F.2d 1400, 1404 (8th Cir.) (en banc) (quoting Local 703, Int'l Bhd. of Teamsters v. Kennicott Bros., 771 F.2d 300, 303 (7th Cir. 1985)), cert. denied, 479 U.S. 1007 (1986). As relevant here, the Union's grievance over Crown's unilateral modification of the retiree health plans arises under the Master Agreements, and survives the expiration of those agreements, if the benefits under those health plans were "accrued or vested under the agreement." Litton Fin., 501 U.S. at 207. So to decide the question of arbitrability, we must first determine whether the retirees' health benefits vested before the Master Agreements expired, that is, whether Crown's unsatisfied obligation to provide such benefits was "already fixed under the contract[s]." Id. at 206.

That brings us to a peripheral matter that must be resolved before we can proceed. "[T]he question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." AT&T Techs., 475 U.S. at 649.[3] But "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." Id. The Union insists that we cannot decide whether retiree health benefits under the Master Agreements have vested because to do so we have to reach the merits. But the Supreme Court since its decision in AT&T Technologies has acknowledged that a court cannot avoid

_____

[3]After oral argument, the Union submitted to the Court a letter under Rule 28(j) of the Federal Rules of Appellate Procedure (Citation of Supplemental Authorities) citing a 2004 decision from the Eighth Circuit that discusses a distinction between procedural arbitrability and substantive arbitrability. IAM's counsel raised the issue at oral argument, but we do not find such an issue in the Union's brief. We will not consider an argument that is raised for the first time either at oral argument or in a 28(j) letter. Twin Cities Galleries, LLC v. Media Arts Group, Inc., 476 F.3d 598, 602 n.1 (8th Cir. 2007) (oral argument); Harstad v. First Am. Bank, 39 F.3d 898, 905 (8th Cir. 1994) (28(j) letter). In any event, the distinction referred to is not relevant here.

its duty to decide whether a dispute is arbitrable merely because doing so will require the court "to interpret a provision of a bargaining agreement." Litton Fin., 501 U.S. at 209. The Union cites to some cases where courts have managed to decide the question of arbitrability without getting to the merits, and urges us to do so here. Of course, there are as well any number of cases that follow the Litton Financial teachings, where courts have addressed the merits of an underlying dispute in order to determine arbitrability. We see no way to avoid examining and interpreting language in the Master Agreements (including the documents they incorporate) in order to determine if the retiree health benefits vested under the terms of those agreements such that Crown cannot undertake to unilaterally modify the retiree health plans, notwithstanding that deciding the vesting issue answers the question that would otherwise go before the arbitrator. In this case, we believe that "the judicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance." Int'l Bhd. of Elec. Workers, Local 1 v. GKN Aerospace N. Am., Inc., 431 F.3d 624, 628 (8th Cir. 2005). We will, then, take up the question of vesting.

There are several provisions in the Master Agreements that preclude vesting in this case. The article denominated "Insurance" incorporated by reference the revised "Group Insurance Agreement" into the Master Agreements, and Crown agreed to continue those group insurance agreements "without modification for the life of" the Master Agreements—all of which have since expired. 1993 Master Agreement art. 21. A "clause expressly limiting the duration of the retirement health benefits . . . to the duration of the Master Agreement . . . [is] inconsistent with an intent to vest health benefits for life." John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1307 (8th Cir. 1994), cert. denied, 515 U.S. 1105 (1995). Likewise, a coordination-of-benefits clause that appears in the Description of Health Benefits (a part of the Master Agreements) is "inconsistent with vesting." Id. That provision allows for a reduction in health benefits based on eligibility for benefits under another group health insurance plan, including Medicare. "[T]he Plan cannot

-9-

be interpreted to provide vested rights for prior retirees in one provision and to take such rights away in another." Anderson v. Alpha Portland Indus., 836 F.2d 1512, 1519 (8th Cir. 1988) (quoting and affirming Anderson v. Alpha Portland Indus., 647 F. Supp. 1109, 1127 (E.D. Mo. 1986)), cert. denied, 489 U.S. 1051 (1989). Finally, the following blanket reservation of rights to Crown to unilaterally modify or terminate the retiree health plans, set forth in the Retiree Health Benefits Plan under the heading "Future of The Plan," is fatal to any vesting argument: "Continental hopes and expects to continue the Plan indefinitely, but reserves the right to change or terminate it in the future, subject naturally, to any outstanding contractual agreements." Retiree Health Benefits Plan at 52. This is a clear reservation of rights to do what Crown has done—modify the retiree health plans that were bargained for under expired Master Agreements. Where there is no "affirmative indication of vesting" in the collectively bargained agreement, "an unambiguous reservation-of-rights provision is sufficient without more to defeat a claim that retirement welfare plan benefits are vested." Stearns v. NCR Corp., 297 F.3d 706, 712 (8th Cir. 2002), cert. denied, 537 U.S. 1160 (2003).

IAM has directed us to no terms in the Master Agreements that explicitly vest retiree health benefits. But the Union asserts that language in the Master Agreements does show that the parties intended these benefits to vest. First, IAM argues that this language under the paragraph "Termination of Coverage" in the Retiree Health Benefits Plan shows an intent to vest benefits because it promises coverage "until death":

> Your personal coverage continues until your death. Your Dependent spouse's coverage continues after your death until the earlier of his or her death or remarriage. Your Dependent children's coverages continue after your death until the earlier of the date any such child is no longer a Dependent as defined or the date your Dependent spouse's coverage stops.

Retiree Health Benefits Plan at 48. This is not explicit vesting language, and in any case, it is inconsistent with the reservation-of-rights clause quoted above, which controls. See Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir. 1990) (noting that the Court had previously held that retirees' burden to prove vesting of welfare benefits "was not met by the employer's promise to provide welfare benefits 'until death of retiree' where the employer had expressly reserved the right to terminate or amend the plan"). Likewise, the cap on "lifetime benefits" set out in the health plans is a limiting provision, hardly an intent to vest benefits for life. IAM also suggests that the ten-year continuous-service minimum requirement to qualify for postretirement health benefits means that such benefits were "worked towards or accumulated over time" and therefore were accrued. Br. of Appellees at 31. We disagree. The minimum service that an employee must have to be eligible to retire with health benefits is not the set-point for vesting of those health benefits after retirement.

Finally, the Union directs our attention to the Description of Benefits dated April 30, 1993, which was part of the 1993 Master Agreement and applied to employees and retirees alike, for another reservation-of-rights provision that, according to IAM, is ambiguous and therefore does not preclude vesting:

> Crown expects to continue these plans indefinitely, but reserves the right to amend, modify, or discontinue the plans at any time subject to, and within the framework of, applicable federal legislation and subject to any outstanding contractual agreements.

Description of Benefits at 66. The Union relies on a case from the Third Circuit in support of its argument that this provision is ambiguous. See Alexander v. Primerica Holdings, Inc., 967 F.2d 90 (3d Cir. 1992). But the Alexander court selectively parsed the reservation-of-rights clause in that case to find the ambiguities, and the primary sources of ambiguity that the Third Circuit identified are not present in the Crown provision reprinted above. Of course, we are not bound by decisions of the Third Circuit, but we do not in any event find Alexander to be persuasive authority because

of differences in language between the two clauses. IAM cannot create an ambiguity simply by saying that it thinks the reservation-of-rights clause can be read to mean something different from Crown's interpretation of the same clause. And even if the clause in the Description of Benefits were ambiguous, an ambiguous reservation of rights does not mean the benefits in the expired health plan are vested; IAM would still have to show an intent to vest, and as we have explained, it cannot do so when the relevant documents are considered as a whole. To the extent the Union is asserting that the reference to "outstanding contractual agreements" makes the reservation-of-rights clause in the Retiree Health Benefits Plan ambiguous as well, the same analysis applies.[4]

In sum, we hold that the retiree health benefits negotiated between Crown and the Union did not vest before the Master Agreements expired, and so did not survive the expiration of those agreements. The presumption of arbitrability that normally applies in the labor law context therefore does not apply here, as the agreements to provide retiree health benefits are outside the scope of the agreements to arbitrate. We hold that the parties did not agree to arbitrate this dispute and that the District Court erred in granting summary judgment to the Union and ordering arbitration of Crown's unilateral modification of pre-2002 retiree health plans.

This brings us to Crown's claims for declaratory judgment under LMRA and ERISA, the dismissal of which Crown also appeals. In resolving the question of arbitrability, we have held as a matter of law that there are no contractual agreements to vest retiree health benefits to be found in any of the relevant Master Agreements in this case. Under ERISA, vesting of welfare (such as health) benefits—unlike pension benefits—is not statutory, so "[a]n employer offering welfare benefits may

---

[4]The Union also points out that the unambiguous provision found in the Retiree Health Benefits Plan did not appear until 1974. But IAM does not dispute that the oldest plan under which retirees are receiving benefits is the 1981 health plan, which does include the reservation-of-rights clause.

unilaterally modify or terminate benefits at the employer's discretion, so long as the employer has not contracted an agreement to the contrary." Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 790 (8th Cir. 2002). Because the benefits are not vested by contract, Crown did not violate the terms of either the expired Master Agreements or ERISA by unilaterally modifying the retiree health plans.

Our legal conclusions would "continue to govern the same issues" in the District Court if we were to reverse the dismissals of Crown's declaratory judgment claims and remand for decisions on the merits. Arizona v. California, 460 U.S. 605, 618 (1983). Because it is "implicitly settled" that Crown may unilaterally modify the retiree health plans at any time, the District Court would be foreclosed—even if we were to reverse the dismissals and remand for decisions on the merits—by the law of the case from declaring that Crown's unilateral modification of the plans violated either the expired Master Agreements or ERISA. Jones v. United States, 255 F.3d 507, 510 (8th Cir. 2001) ("All issues decided by an appellate court become the law of the case. This rule extends not only to actual holdings but also to all issues implicitly settled in prior rulings." (citation omitted)). Determining whether the District Court abused its discretion in dismissing the LMRA declaratory judgment count under 28 U.S.C.§ 2201(a) or whether the court erred in dismissing the ERISA declaratory judgment action for failure to state a claim would change nothing. "When the affirmance or reversal of an order made in the course of the proceeding would make no difference in respect of the controversy on the merits, the appellate court will not determine whether it was decided erroneously . . . ." Chicago Great W. Ry. Co. v. Beecher, 150 F.2d 394, 398 (8th Cir. 1945), cert. denied, 326 U.S. 781 (1946). As explained above, before we could resolve the arbitrability issue, we first had to decide the vesting issue. Our decision that the retiree health benefits did not vest before the Master Agreements expired now makes it impossible for us to grant any further relief on Crown's additional issues on appeal, regardless of how we might decide them.

The summary judgment of the District Court is reversed and the case is remanded with instructions to enter summary judgment for Crown on the question of arbitrability. The claims on appeal regarding the District Court's dismissal of Crown's declaratory judgment counts are dismissed.

_____