# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3325

———————

Newspaper Guild of St. Louis,       *
Local 36047, TNG-CWA,       *
       *
    Plaintiff - Appellee,     *
       *  Appeal from the United States
   v.      *  District Court for the
       *  Eastern District of Missouri.
St. Louis Post Dispatch, LLC,     *
       *
    Defendant - Appellant.   *

———————

Submitted: April 11, 2011
Filed: June 6, 2011

———————

Before WOLLMAN and MELLOY, Circuit Judges, and MILLER, District Judge.[1]

———————

MELLOY, Circuit Judge.

St. Louis Post Dispatch, LLC ("Post Dispatch") appeals from the district court's grant of summary judgment in favor of Newspaper Guild of St. Louis, Local 36047, TNG-CWA ("Guild"), compelling arbitration of a dispute related to healthcare benefits under an expired collective bargaining agreement. For the reasons stated below, we reverse and remand for further proceedings.

———————

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

# I. Background

The Post Dispatch and the Guild are parties to successive collective bargaining agreements, including one dated December 12, 1994 through January 9, 2003 ("1994 Agreement"). The 1994 Agreement provided healthcare benefits under an ERISA-governed welfare benefits plan[2] to eligible employees who retired during the term of the Agreement ("Retirees"). Article XVI of the 1994 Agreement reads as follows:

> The Employer shall provide for the term of this Agreement, beginning February 1, 1999, a group health care plan established with Connecticut General Insurance as set forth in Attachment A.
>
> The Employer reserves the right to change the commercial insurance carrier or to make substantially equivalent benefits available to eligible employees on a self-insured basis or on a basis employing any combination of commercial insurance or self-insured funding. . . .
>
> The Employer agrees to provide for the term of this Agreement on retirement under the terms of the Joseph Pulitzer Pension Plan for each employee covered by this Agreement having ten (10) years or more of continuous service as an employee with the Employer immediately preceding the date of retirement, the group medical insurance benefits provided for in this Article for the retiree. The Employer shall pay the full premium for the employee's coverage only, for the remainder of retired employee's life. It is understood and agreed that the benefits described herein shall remain in effect only for the duration of the retired employee's lifetime.

The Agreement also contains a broad arbitration clause, which permits either party to take to arbitration any "claim or dispute with the Employer by an employee or

---

[2]The plan was initially established with Connecticut General Insurance. Effective January 1, 2003, the Post Dispatch replaced the Connecticut General Plan with the Post Dispatch Options Plan.

employees or by the Guild involving an alleged violation by the Employer of the terms of this Agreement," after first following prerequisite grievance procedures.

In October 2008, the Post Dispatch announced its unilateral decision to modify the retiree health plan such that, effective January 1, 2009, Retirees would be required to pay thirty percent of the premium costs for health insurance. In November 2008, the Guild filed a grievance, claiming that, under the terms of the 1994 Agreement, the Post Dispatch is required to pay full health insurance premiums for the lifetime of each Retiree. The Post Dispatch denied the grievance on the ground that its duty to pay full premiums ended with the expiration of the 1994 Agreement, and that it has the right to require Retirees to pay thirty percent of their premiums. The Guild sought to resolve the dispute in arbitration, but the Post Dispatch declined to arbitrate.

On March 13, 2009, the Guild filed a complaint in the United States District Court for the Eastern District of Missouri under the Labor Management Relations Act, 29 U.S.C. § 185(a), seeking an order compelling arbitration. The district court granted the Guild's motion for summary judgment and ordered the parties to arbitrate the grievance. The court recognized that because the 1994 Agreement is expired, the Guild's grievance falls within the Agreement's arbitration clause only if the Retirees' right to fully-paid healthcare premiums vested under the Agreement. However, the court declined to decide the vesting issue because to decide the issue would be to rule on the merits of the dispute. The court concluded that because it was "possible" for an arbitrator, consistent with the plain meaning of the Agreement, to rule in favor of the party demanding arbitration, the arbitrators should be allowed to decide the issue in the first instance. The Post Dispatch contends that the district court erred in compelling arbitration without first deciding that the Retirees' right to fully-paid healthcare premiums vested under the 1994 Agreement. The Post Dispatch argues that this benefit did not vest under the terms of the Agreement and, therefore, the Guild's grievance is not arbitrable.

## II. Discussion

"We review de novo the decision to grant summary judgment." Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, 501 F.3d 912, 914 (8th Cir. 2007). "Where, as here, an arbitration provision of a contract is at issue, we also review de novo the court's interpretation of the contract and the arbitration clause." Int'l Bhd. of Elec. Workers v. GKN Aerospace N. Am., Inc., 431 F.3d 624, 627 (8th Cir. 2005). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). Thus, when deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement. United Steelworkers of Am. v. Duluth Clinic, Ltd., 413 F.3d 786, 788 (8th Cir. 2005). When, as here, the case deals with rights arising under an expired collective bargaining agreement, the Supreme Court has held that:

> [a] postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 205–06 (1991). Thus, because the Guild's grievance involves actions taken after the expiration of the 1994 Agreement, the grievance is "arbitrable only if [it] involve[s] rights which accrued or vested under the Agreement, or rights which carried over after expiration of the Agreement . . . as continuing obligations under the contract." Id. at 209.

"A 'vested right' is commonly defined as a 'right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the

person's consent.'" Halbach v. Great-West Life & Annuity Ins. Co., 561 F.3d 872, 877 (8th Cir. 2009) (quoting Black's Law Dictionary 1349 (8th ed. 2004)); see also Sprague v. Gen. Motors Corp., 133 F.3d 388, 400 (6th Cir. 1998) ("To vest benefits is to render them forever unalterable."). Thus, the Retirees' right to fully-paid health insurance premiums was "vested" if the benefit was fixed under the terms of the 1994 Agreement such that the Post Dispatch could not change the benefit post-expiration. That is to say, the right vested only if the Agreement promised full payment of health insurance premiums for the lifetime of each Retiree rather than merely for the period during which the 1994 Agreement was in force. Similarly, the right can only have survived the expiration of the 1994 Agreement if the Agreement promised a lifetime benefit.

It is true that, ordinarily, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). However, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." Id. Thus, courts "must determine whether the parties agreed to arbitrate [the] dispute, and . . . cannot avoid that duty because it requires [them] to interpret a provision of a bargaining agreement." Litton, 501 U.S. at 209; see also Crown Cork, 501 F.3d at 917 ("[A] court cannot avoid its duty to decide whether a dispute is arbitrable merely because doing so will require the court to interpret a provision of a bargaining agreement." (internal quotation marks omitted)); GKN Aerospace, 431 F.3d at 628 ("[T]he judicial responsibility to determine arbitrability takes precedence over the general rule to avoid consideration of the merits of a grievance.").

This court has previously considered the arbitrability of a dispute over whether an employer's unilateral decision to modify certain retiree health plans violated the terms of the collective bargaining agreements under whose terms its employees

retired.  See Crown Cork, 501 F.3d at 913–14.  In that case, we saw "no way to avoid examining and interpreting language in the [relevant collective bargaining agreements] . . . in order to determine if the retiree health benefits vested under the terms of those agreements such that [the employer] cannot undertake to unilaterally modify the retiree health plans, notwithstanding that deciding the vesting issue answers the question that would otherwise go before the arbitrator."  Id. at 917.  Likewise, here, we see no way to decide whether the Guild's grievance is arbitrable without reaching the merits of the dispute.  Therefore, we conclude that the district court erred in compelling arbitration without first deciding whether the 1994 Agreement requires the Post Dispatch to pay full health insurance premiums for the lifetime of each Retiree.

Unlike ERISA-governed pension benefits, welfare benefits do not automatically vest as a matter of law.  Anderson v. Alpha Portland Indus., 836 F.2d 1512, 1516 (8th Cir. 1988).  Rather, vesting is a matter of contractual intent, and "[t]he burden is on the plaintiffs to show that the parties intended retirees' benefits would be vested and not tied to the agreement which created them."  Local Union No. 150-A, United Food & Commercial Workers Int'l Union v. Dubuque Packing Co., 756 F.2d 66, 69–70 (8th Cir. 1985).  While construction of contractual agreements ordinarily constitutes a question of law, "if the contract is deemed ambiguous, then the court may weigh extrinsic circumstances to aid in its construction."  Id. at 69.  In the absence of express vesting provisions, "an intent to confer vested benefits may nonetheless be derived from ambiguous language in [the collective bargaining agreement] construed in light of the parties' lengthy collective bargaining history."  John Morrell & Co. v. United Food & Commercial Workers Int'l Union, 37 F.3d 1302, 1304 (8th Cir. 1994).

In Crown Cork, we found it inefficient and unnecessary to remand the question of arbitrability to the district court because the parties had submitted a joint stipulation of the material facts, the record was complete, and our review of the legal

conclusions was de novo in any event. 501 F.3d at 916. That is not the case here. The Guild and the Post Dispatch vigorously dispute issues of both law and fact, including whether Article XVI of the 1994 Agreement is ambiguous, and whether the Summary Plan Descriptions—which contain a reservation of rights, a coordination of benefits provision, and a lifetime cap on benefits—constitute intrinsic or extrinsic evidence of the parties' intent. The parties also point to various other extrinsic evidence and vehemently disagree as to whether they bargained for fully-paid health insurance premiums for life or just for the term of the Agreement. Under these circumstances, we believe that the question of whether the right to fully-paid premiums vested under the 1994 Agreement is best decided in the first instance by the district court. See Thomsen v. Famous Dave's of Am., Inc., 606 F.3d 905, 911 (8th Cir. 2010) ("Where contract terms are ambiguous, construction becomes a question of fact unless extrinsic evidence is conclusive." (internal quotation marks omitted)); Garnac Grain Co. v. Blackley, 932 F.2d 1563, 1571 (8th Cir. 1991) ("Questions of law, like other questions, should normally be decided by the District Court in the first instance.").

## III. Conclusion

Accordingly, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

_____