HARTZ, Circuit Judge,
concurring and dissenting:
I agree fully with Judge Phillips’s cogent discussion of our appellate jurisdiction. I must respectfully dissent from the majority, however, on their resolution of the arbitrability issue. In my view, the presumption of arbitrability has not been overcome.
As the Supreme Court has instructed, if a collective bargaining agreement (CBA) contains an arbitration clause, there is a presumption that disputes should be submitted to arbitration “unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.” United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). If the arbitration clause is broad, the presumption in favor of arbitrability is strong and “only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.” AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks omitted).
The grievance-procedure section in the CBA before us provides for the “adjustment of alleged grievances relating to hours, wages or conditions of employment as covered by this Agreement.” Article 21, ¶ 2. The arbitration section provides for arbitration of any dispute “relating to hours, wages, or conditions of employment, as covered by this Agreement, which shall not be settled through the grievance procedure.” Article 22, ¶ 1.
The majority opinion concludes that this language is not “susceptible to an interpre *1111 tation that covers disputes over retired workers’ healthcare benefits.” Op. at 1108. It relies on the Supreme Court’s opinion in Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), which held that an employer’s unilateral modification of retired employees’ retirement benefits is not an unfair labor practice under the National Labor Relations Act (NLRA). The Court said that for purposes of the mandatory-bargaining provisions of the NLRA, retirees are not “employees,” see id. at 166-76, 92 S.Ct. 383, and pensioners’ benefits, are not “terms and conditions of employment,” see id. at 177-82, 92 S.Ct. 383. But the Court did not purport to hold that the quoted words always have those meanings in the context of labor relations. For example, the Court noted that retired workers are employees within the meaning of the term in another provision of the NLRA. See id. at 169-70, 92 S.Ct. 383. And much of the opinion is devoted to discussion of the policies underlying the mandatory-bargaining requirements of the NLRA, a discussion that would have been unnecessary if the language at issue always had the same meaning in labor law and CBAs. Of particular importance, the Court made clear that something that is not a mandatory subject of bargaining may still commonly be a subject that employers and employees decide to bargain over, see id. at 175-76, 181 n. 20, 92 S.Ct. 383; and one can infer that the meaning of “terms and conditions of employment” could expand with the scope of bargaining.
In short, although the Allied Chemical opinion is certainly an important consideration, the context here is rather different from what confronted the Supreme Court, and we are interpreting a CBA, not the NLRA. Our task is to determine the meaning of the term conditions of employment in the CBA.
The first occurrence of the term is in Article 1, ¶ 3, which provides that the CBA “shall embody general working rules, hours of work, rates of pay, grievance procedure, method of arbitration, and other conditions of employment as hereinafter outlined.” (emphasis added). One could readily infer from this language that any benefit or burden “outlined” in the CBA is one of the listed items — that is, it is a “condition!'] of employment.” In other words, when the CBA uses the term conditions of employment, it is including any subject addressed in the CBA. Two CBA provisions are particularly relevant. Article 11 (entitled “Other Employee Benefits”), ¶ 1 states that “benefits heretofore enjoyed by employees covered by this Agreement, such as retirement benefits, ... shall continue subject to collective bargaining in the future under this Agreement.” (emphasis added). And Article 11, ¶ 3, states that “Retirees’ and future retirees’ and their dependents’ health care benefits will be provided according to the terms of the Retirees’ Medical Managed Care/Medicare Coordinated Plan (M/M).” (emphasis added). Because the CBA addresses retiree benefits, the arbitration provision covering grievances “relating to ... conditions of employment,” Article 21, ¶2, would appear to apply to grievances concerning compliance with the CBA requirements for retiree benefits, the subject matter, of the grievance here. In my view, the Supreme Court’s opinion in Allied Chemicals is not enough in itself to provide “forceful evidence” that the claim here is excluded from arbitration.
I read the limited appellate case law on the matter as supporting my view. Although ruling on other grounds that a dispute was not arbitrable, the Eighth Circuit stated in Crown Cork & Seal Co. v. International Ass’n of Machinists & Aerospace Workers, 501 F.3d 912 (8th Cir. *1112 2007), that a nearly identical arbitration clause encompassed disputes over retiree health benefits. See id. at 915. Crown had agreed to provide health benefits for retirees, but it decided to unilaterally modify them. See id. at 913. The union sought to compel arbitration. See id. at 914. The CBA provided for arbitration of “any difference between the Local Management and the Union or employees as to the interpretation or application of, or compliance with, the Master Agreement respecting wages, hours, or conditions of employment.” Id. at 915 (emphasis added) (brackets and internal quotation marks omitted). The Eighth Circuit agreed with Crown that “retirees are outside the collective bargaining relationship” under Allied Chemical. Id. (internal quotation marks omitted). But it also noted that unions can represent retirees, and it concluded that the language in the arbitration clause showed that Crown and the union had agreed to arbitrate disputes over retiree health benefits. See id.
The Seventh Circuit has two contrasting cases that are also instructive. In Printing Specialties & Paper Products Local 680 v. Nabisco Brands, Inc., 833 F.2d 102 (7th Cir.1987), the dispute concerned whether the sale of a plant constituted a “job termination” that entitled some employees to a special early-retirement benefit in the company pension plan, see id. at 105. The CBA had an arbitration clause with language very similar to the clause in our case, requiring arbitration for “any grievance or misunderstanding involving wages, hours or working conditions, which any employee may desire to discuss and adjust with the Company.” Id. at 103 (internal quotation marks omitted). The court held that the dispute did not come within the arbitration clause. See id. at 105.
In contrast, however, in Local 232, Allied Industrial Workers v. Briggs & Stratton Co., 837 F.2d 782 (7th Cir.1988), the court ordered arbitration of the union’s claim that the company had violated the CBA by making unilateral changes in its retirement plan, see id. at 783. The arbitration clause was broader than the one in Nabisco, providing that “all grievances between the two parties shall be deemed arbitrable.” Id. at 785 (internal quotation marks omitted). But the court did not distinguish Nabisco on that ground. Rather, the “critical distinction,” wrote the court, “relate[d] to the underlying issue in dispute in each case.” Id. at 787. In Nabisco the dispute was over the meaning of a term in the plan, rather than a change in the terms of the plan, so the dispute was unrelated to the company’s agreement in the CBA to continue the plan. See id. But in Local 232, the union’s complaint that the company had changed the terms of the plan “focuse[d] on the one aspect of the retirement plan that [was] specifically addressed in the [CBA] — maintaining the plan.” Id. The court noted that it had said in Nabisco that if the company had “failed to fulfill an obligation under the collective bargaining agreement which abrogated the full force and effect of the Pension Plan, such as failing to fund the Plan adequately or eliminating the Plan altogether, the result would have been different.” Id. (internal quotation marks omitted). But even though in Local 232 the company’s “amendments to the retirement plan are not identical to these examples, yet the changes arguably still constitute a failure to maintain the plan,” and “[r]esolution of this issue [determining whether the company had maintained the plan] is not our task,” but is one for the arbitrator. Id. at 788. I would conclude from this that the Seventh Circuit would construe our arbitration clause to encompass the union’s claim.
*1113 In sum, I am persuaded that the arbitration clause before us is susceptible to the interpretation that it covers this dispute. Given that other circuit courts have said that they would interpret similar arbitration provisions to encompass similar disputes, I would apply the presumption in favor of arbitrability and submit this dispute to arbitration.