PRINTING SPECIALTIES AND PAPER PRODUCTS UNION LOCAL 680, GRAPHIC COMMUNICATION INTERNATIONAL UNION, AFL–CIO, Plaintiff–Appellant,

v.

NABISCO BRANDS, INC., Defendant–Appellee.

No. 86–2648.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1987.

Decided Nov. 3, 1987.

As Amended Nov. 25, 1987.

Thomas D. Allison, Cotton, Watt, Jones & King, Chicago, Ill., for plaintiff-appellant.

Christopher B. Nelson, Kovar, Nelson & Brittain, Chicago, Ill., for defendant-appellee.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Appellant Printing Specialties and Paper Products Union Local 680 ("the Union") appeals from the district court's ruling, 649 F.Supp. 253, that a dispute between the Union and Nabisco Brands over pension benefits was not arbitrable under their collective bargaining agreement. We affirm.

I.

According to the stipulated facts in this case, Nabisco and the Union entered into a

collective bargaining agreement with the employees at Nabisco's mill and printing plant in Marseilles, Illinois. In addition to establishing terms for working conditions, the collective bargaining agreement contained a broad arbitration clause that provided for an internal grievance process followed by final binding arbitration regarding disputes arising under the agreement. Specifically, Article 9 of the agreement required arbitration for "any grievance or misunderstanding involving wages, hours or working conditions which any employee may desire to discuss and adjust with the Company...." The agreement also included a passing reference to the Company pension plan that states, "The Company agrees to continue its present Pension Plan in full force and effect for the term of the agreement." This is the only mention in the agreement of pensions.

The Pension Plan covers both union and non-union employees at Nabisco facilities nationwide, including some represented by ninety-six bargaining units as well as employees not represented by unions. The Plan provides that it is to be administered by a Pension Committee and an Employee Benefits Committee,[1] and that the duties of administration include the interpretation of Plan provisions dealing with eligibility, service, vesting, and determination of benefits. One such benefit listed in the Pension Plan is a special early retirement benefit for those employees whose services are "terminated because of the elimination of [their] employment duties...." Under the provisions of the Plan, an employee who has been denied a benefit claim may initiate or invoke an internal appeal procedure with the filing of a request for review by the Committee.

The instant dispute arose at the time of Nabisco's sale of its Marseilles plant to Federal Paper Board Company in December of 1984. Federal offered employment to all Nabisco employees at the Marseilles plant and agreed to recognize the Union as the exclusive bargaining agent for those employees. Despite Federal's offer of employment, several individuals regarded Nabisco's sale of the plant as a "job termination" and claimed an entitlement to the special early retirement benefit contained in the Pension Plan. When these employees applied to receive the benefit through the Pension Plan procedures, the Pension Committee denied their claims, reasoning that the employment duties were not terminated because Federal had offered the workers continued employment. The Pension Committee's conclusion was upheld by the Employee Benefits Committee on review.[2]

The Union chose to pursue a different route to resolve the conflict. It filed a grievance under the collective bargaining agreement, contesting Nabisco's denial of early retirement benefits on behalf of the union members. Nabisco denied that the collective bargaining agreement covered the disputed pension benefits and refused to arbitrate the grievances.

The Union sued Nabisco in district court pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[3] to compel arbitration. The district court granted Nabisco's motion for summary judgment, holding that the dispute over eligibility for the pension benefits was not covered under the collective bargaining agreement and thus not arbitrable under the language or terms of the agreement. In making this determination, the court reviewed the language of the collective bar-

1. The Employee Benefits Committee is appointed by the Board of Directors of Nabisco to control and manage the operation and administration of the Pension Plan. The Pension Committee consists of three or more members appointed at the discretion of the Employee Benefits Committee.

2. The Pension Plan terms provide that the Employee Benefits Committee has the power to review the decisions of the Pension Committee.

3. Section 301 provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

gaining agreement, the language of the Pension Plan, the bargaining history of the Union and Nabisco, and the independence of the administration of the Pension Plan from the administration of the collective bargaining agreement. The court concluded that Nabisco and the Union never intended the arbitration language in the collective bargaining agreement cover a disputed pension benefits question, and the Union appeals.

## II.

In the *Steelworkers Trilogy,*[4] the Supreme Court announced the proper standard in a Section 301 suit for determining the parties' rights and obligations to arbitrate grievances under a collective bargaining agreement. In *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 1580 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the Court stated:

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.... [T]he moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for."

*Id.* at 567–68, 80 S.Ct. at 1346. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Co.,* 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (footnote omitted). Nevertheless, the Court has noted that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communica-*

*tions Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353).

■ In determining whether the parties intended that a dispute be arbitrable under the terms of a collective bargaining agreement, a court must, of course, first examine the arbitration clause in question. *AT & T,* 106 S.Ct. at 1419. Here, the collective bargaining agreement required arbitration for "any grievance or misunderstanding involving wages, hours or working conditions." The Union submits that this duty to arbitrate extended to disputes over pension benefits because the agreement provided that Nabisco would continue its present Pension Plan in full force and effect.

Where the arbitration clause is as broad as the one in this case, the Supreme Court has held that the presumption of arbitrability over the grievance is particularly applicable. *AT & T,* 106 S.Ct. at 1419. "In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.* (quoting *Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. at 1354). Here, there is no express provision in the collective bargaining agreement excluding the disputed pension benefits from arbitration; yet we agree with the district court's conclusion that there is a wealth of forceful evidence, consisting of the Pension Plan's independence from the collective bargaining agreement, the bargaining history of the parties, and the lack of Pension Plan terms in the collective bargaining agreement, of a purpose to exclude claims of entitlement to early retirement benefits from arbitration. In examining this evidence, we are mindful of the Supreme Court's warning that we are not to rule on the potential merits of the underlying claim when deciding whether the parties agreed to submit this particu-

---

**4.** *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

lar grievance to arbitration. *AT & T*, 106 S.Ct. at 1419.

We are convinced that the passing reference to the Pension Plan in the collective bargaining agreement does not bring specific pension disputes, such as the ones involved here, under the umbrella of the arbitration clause of the agreement. The collective bargaining agreement did not incorporate the provisions of the Pension Plan, but merely stated that Nabisco would keep the Pension Plan in full force and effect. We agree with the Third Circuit's statement in *RCA Corp. v. Local 241, International Federation of Professional & Technical Engineers*, 700 F.2d 921, 927 (3d Cir.1983), that the "mere mentioning of the Retirement Plan in the General [collective bargaining] Agreement is insufficient reason to construe the Retirement Plan as part and parcel of the General Agreement."

In the instant case, we fail to find a clear relationship between the Pension Plan and the collective bargaining agreement. The reference to the Pension Plan does not reflect, much less even infer, that any Pension Plan terms were included in the collective bargaining agreement as a result of negotiation. In fact, evidence to the contrary establishes that the Union submitted proposed changes regarding the Pension Plan during negotiations with Nabisco, but Nabisco rejected these proposals.

Furthermore, the Pension Plan was not established through collective bargaining with this Union; instead, the Pension Plan was in existence covering Nabisco employees nationwide before the Union organized and represented the Marseilles plant employees. These past dealings between the Union and Nabisco clearly establish the Pension Plan's independence and separation from the Union's collective bargaining agreement. Moreover, the Pension Plan is all inclusive in that it prescribes and sets forth its own plan or formula for determining benefits and administering grievances. Given the Pension Plan's separate and distinct independence from the collective bargaining agreement, Nabisco's refusal to negotiate with the Union any proposed changes to the Pension Plan, and the fact that no Pension Plan terms were included in the collective bargaining agreement as a result of negotiation, we are convinced that this forceful evidence clearly reflects that the disputed Pension Plan benefits were never intended to be arbitratable between the parties under the provisions of the collective bargaining agreement.[5]

In this case, we might reach a different result if Nabisco and the Union had explicitly bargained over the terms of the Pension Plan and made their agreement a part of the collective bargaining agreement. Had Nabisco failed to fulfill an obligation under the collective bargaining agreement which abrogated the full force and effect of the Pension Plan, such as failing to fund the Plan adequately or eliminating the Plan altogether, the result would have been different. In the present case, however, the individuals represented by the Union have a specific claim which is arguably provided for in the terms of the Pension Plan, not the collective bargaining agreement. We hold the claims the Union seeks to arbitrate are not, on their face, governed by the collective bargaining agreement. Thus, the decision of the district court granting Nabisco's motion for summary judgment is

AFFIRMED.

---

5. The Union argues that the district court improperly decided the merits of the dispute, contrary to the Supreme Court's mandate in *AT & T* that a court is not to rule on the potential merits of the underlying claims when deciding whether the parties have agreed to submit a particular grievance to arbitration. 106 S.Ct. at 1419. This argument is without merit. The merits of the underlying claim in this case are whether the employees are entitled to the disputed pension benefits, a matter on which the district court as well as this court offered no opinion. The district court properly limited its inquiry to the scope of the agreement's arbitration clause, and it did not run afoul of the holding in *AT & T*.