In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-4001

KARL SCHMIDT UNISIA, INCORPORATED,

*Plaintiff/Counter-Defendant/Appellant,*

*v.*

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE, AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW LOCAL 2357, ET AL.,

*Defendants/Counter-Plaintiffs/Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:07-CV-297—**Joseph S. Van Bokkelen**, *Judge.*

ARGUED OCTOBER 1, 2010—DECIDED DECEMBER 17, 2010

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* International Union, United
Automobile, Aerospace and Agricultural Implement
Workers of America, UAW Local No. 2357 ("Union"),
filed grievances against Karl Schmidt Unisia, Inc. ("Com-

pany"), on its own behalf and on behalf of Sam Jenkins and John Tony Smith. After initially participating in the grievance process, the Company reversed course and filed suit against the Union, Smith, and Jenkins in federal district court, seeking a declaratory judgment that the Union's grievances are not arbitrable. The Union filed a counterclaim to compel arbitration and subsequently filed a motion for summary judgment. The district court found the grievances arbitrable under the terms of the parties' collective bargaining agreement (CBA), and it therefore granted the Union's motion for summary judgment. We affirm.

## I. BACKGROUND

In 2005, the parties negotiated the CBA that was in place at all relevant times of this dispute. Section 13.01 of the CBA includes a "Thirty and Out" provision, which provides eligibility for supplemental retirement benefits to an employee once he has reached the age and seniority requirements in the provision. Section 13.01 also provides that the Pension Plan, which sets forth other features of the Company's retirement policy, "shall continue in effect" for the term of the CBA. After the CBA had gone into effect, the Company unilaterally added language to § 5.03 of the Pension Plan. Based on this amendment to § 5.03, to be eligible to receive the supplemental retirement benefit, an employee must have reached the age and seniority requirements of the Thirty and Out provision "as of his date of termination of employment." Section 6.02 of the CBA provides the

rules for loss of employee seniority. Section 4.01 of the CBA outlines a four-step dispute-resolution procedure for grievances; the fourth step is arbitration.

In April 2007, the Company notified the Union of impending layoffs at its Fort Wayne facility. Earlier in 2007, the Union had learned the Company planned to deny supplemental retirement benefits to employees who were on layoff when they met the requirements of § 13.01. Fearing the Company would deny the benefits of the Thirty and Out provision to otherwise eligible laid-off employees, the Union initiated the grievance procedure provided by the CBA. After completing the first three steps, and with the dispute still unresolved, the Union appealed the grievance to arbitration. At this stage, the Union also filed grievances on behalf of Smith and Jenkins, who had reached the age and seniority requirements of § 13.01, but to whom the Company was denying the Thirty and Out benefit. Pursuant to the process outlined in the CBA, the Company and Union each rejected one panel of arbitrators.

When the third panel was appointed, the Company refused to arbitrate. Instead, it filed suit in federal district court against the Union, Jenkins, and Smith, seeking a judgment declaring the parties' dispute not arbitrable. The Company asserted that the issue was governed by the terms of the Pension Plan and not by the terms of the CBA. The Union filed a counterclaim seeking an order to compel arbitration of the grievances and then moved for summary judgment. The district court granted the Union's motion for summary judgment and ordered arbitration. The Company now appeals.

## II. ANALYSIS

When a district court has ordered arbitration, we review that decision *de novo*. *United Steel Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 535 (7th Cir. 2008). The court cannot compel a party to arbitrate a dispute unless that party has contractually agreed to do so. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986). We keep in mind, however, the federal policy favoring arbitrability. *See United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578 n.4 (1960) (explaining that a broad arbitration clause promotes industrial stability, because the clause represents the union's consideration for its agreement not to strike while the CBA is in effect). If the parties' contract includes a broad arbitration clause, there is a presumption in favor of arbitrability. *Trimas*, 531 F.3d at 536. Finally, we must take care not to address the merits of the underlying claim. *AT&T Techs.*, 475 U.S. at 650.

The language of the CBA's arbitration clause forms the basis of our analysis. *Trimas*, 531 F.3d at 536. Section 4.02(a) of the CBA provides, in relevant part, "The Union may grieve any violation of this agreement . . . . Each grievance arising under this agreement shall be resolved in accordance with the procedure described in this article of the agreement. The procedure shall provide the sole and exclusive remedy for any grievance." A grievance, as defined in § 4.01 of the CBA, is "a claim by the Union, an employee, or group of employees . . . that the Company has violated an express provision of this agreement by some conduct, act or omission occurring

during the term of the agreement." The Union claims the Company violated the Thirty and Out provision of § 13.01. On its face, this claim is a grievance under the CBA.

Because the CBA contains a generally applicable arbitration clause, the Union's claim is presumed arbitrable. *See AT&T Techs.*, 475 U.S. at 650. To overcome the presumption of arbitrability, a party must show either an "express provision excluding [the] grievance from arbitration" or "the most forceful evidence of a purpose to exclude the claim from arbitration." *Warrior & Gulf*, 363 U.S. at 584-85.

### A. Express Exclusion from Arbitration

The Company argues the CBA's arbitration clause and the CBA's definition of "grievance" expressly exclude the Union's claim from arbitration. We disagree. According to the Company, because the CBA does not specifically address whether an employee may be laid off when he reaches the § 13.01 requirements, the Union has not alleged that the Company violated an express provision of the CBA. And because a grievance must claim a violation of an express term of the CBA, the Union's claim is not a grievance. The arbitration clause applies to grievances, the argument goes, so we should apply the interpretive rule of *inclusio unius est exclusio alterious* (the inclusion of one is the exclusion of another) to show the arbitration clause expressly excludes the Union's claim.

But to articulate this argument is to recognize its absurdity: mere failure to address a type of dispute is not necessarily an express exclusion of that type. A rule of construction that implies exclusion is irrelevant to the question of express exclusion. Moreover, if we were to accept this argument, the arbiter's interpretive domain would be a null set—limited to disputes for which a plain reading of the CBA clearly determines the outcome. Finally, to accept this argument would be to conclude that §§ 13.01 and 6.02 of the CBA do not require the Company to provide the supplemental Thirty and Out benefit to employees who are laid off when they meet the relevant age and seniority requirements. This conclusion would be a ruling on the merits of the Union's claim, and we "have no business" making such a ruling. *AT&T Techs.*, 475 U.S. at 649-50.

The Company's express exclusion argument also fails for a more fundamental reason: the argument distorts the Union's claims. The Union alleges the Company violated express terms of the CBA, namely §§ 13.01 (Thirty and Out) and 6.02 (Seniority), by denying the Thirty and Out benefit to employees who had met the § 13.01 requirements while on layoff and who had not lost seniority under § 6.02.[1] The Company tries to characterize the grievance as a dispute about the meaning

---

[1] In its briefs to the district court and this court, the Union notes that it also seeks to arbitrate whether the Company's unilateral amendment of the Pension Plan itself violates the CBA. Because the Union's other claims are arbitrable, we need not consider this argument.

of "termination" in the Pension Plan. It claims there is no dispute about any express term in the CBA because the Company agrees with the Union that laid-off employees satisfy all conditions of § 13.01's Thirty and Out provision and retain seniority under § 6.02. But the Union does not claim that the Company has misinterpreted the CBA; rather, it claims that the Company has violated the terms of the CBA and that the CBA provides for arbitration of precisely such claims.

### B. Most Forceful Evidence of Parties' Intent not to Arbitrate

The Company presents several arguments purporting to show most forceful evidence that the parties intended to exclude the Union's grievance from arbitration. None of these arguments, either alone or in combination, rebuts the presumption of arbitrability.

### 1. Issues Underlying the Dispute

The Company argues that the best determinant of whether the parties intended to arbitrate the dispute is whether the answer to the underlying issue resides within the terms of the CBA or some other document. The Company claims the underlying issue here is the meaning of "termination" as used in § 5.03 of the Pension Plan, so the parties did not intend to arbitrate this dispute.

We need not decide whether the Company's proposed "underlying issue" test may provide most forceful evi-

dence against arbitrability[2] because issues underlying the present dispute require interpretation of the CBA. The Company argues that because it agrees the laid-off employees meet all CBA requirements for the Thirty and Out benefit, the only disputed issue is whether the "termination" language in the Pension Plan makes the laid-off employees nonetheless ineligible for the Thirty and Out benefit.

But the meaning of "termination" is only one of several issues underlying the dispute. One issue the Company does not recognize is whether § 13.01 of the CBA reflects the parties' intent to allow all employees, regardless of layoff status, to receive the Thirty and Out benefit. If the best reading of § 13.01 reveals that the parties intended to allow laid-off employees to receive the Thirty and Out benefit, then any contrary Company action based on an interpretation of "termination" in the Pension Plan would violate § 13.01, even if it does not violate the Pension Plan. Another underlying issue is whether § 13.01 contemplates that the Pension Plan's Thirty and Out eligibility requirements will remain constant. If the best reading of § 13.01 reflects the parties' intent to maintain the eligibility requirements of the Pension Plan as of the effective date of the CBA, then any Company denial of the Thirty and Out benefit based

---

[2] We note that nothing in the arbitration clause or the definition of "grievance" limits arbitrable disputes to those in which resolution of the underlying issue requires interpreting the CBA.

on a subsequent unilateral amendment to the Pension Plan may violate the CBA. Since these issues underlying the dispute require interpretation of the CBA, the Company's "underlying issues" argument does not show most forceful evidence of an intent to exclude the dispute from arbitration.

### 2. Negotiation of the Disputed Language

Again focusing on the scope of the underlying dispute, the Company claims the parties never negotiated the relevant provisions. According to the Company, the disputed provisions are those in § 5.03 of the Pension Plan that require an employee to reach age and seniority requirements before "his date of termination of employment" in order to receive the Thirty and Out benefit. The Company argues that this lack of negotiation is most forceful evidence of the parties' intent not to arbitrate the dispute. We have addressed above the Company's argument that the only issue disputed in the grievance is the definition of "termination" in the Pension Plan. Yet for the sake of thoroughness, we discuss the further reasons that the Company's argument regarding negotiated language does not show most forceful evidence of an intent to exclude the Union's grievance from arbitration.

This court has held that non-negotiation of the disputed language sometimes constitutes most forceful evidence of an intent not to arbitrate. *See Printing Specialties and Paper Products Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102, 105 (7th Cir. 1987); *Int'l Assn. of Machin-*

*ists and Aerospace Workers, Dist. No. 10 v. Waukesha Engine Div., Dresser Indus., Inc.*, 17 F.3d 196, 199 (7th Cir. 1994) (refusing to order arbitration because no disputed term appeared in the parties' CBA, but not specifying that the absence of a disputed term constituted most forceful evidence of an intent not to arbitrate). In *Nabisco*, the court found forceful evidence the parties did not intend to arbitrate a dispute over pension benefits because the parties' CBA did not incorporate the pension plan, the pension plan contained a separate plan for administering grievances, and the parties did not negotiate any terms of the pension plan into the CBA. *Nabisco*, 833 F.2d at 105.

While the Company correctly asserts the absence of any disputed provision from a negotiated agreement may constitute most forceful evidence of the parties' intent to exclude the dispute from arbitration, the Company incorrectly claims the CBA here includes no disputed provision. In *Nabisco*, the CBA's only reference to the pension plan was a provision that the company "would keep the Pension Plan in full force and effect." *Nabisco*, 833 F.2d at 105 (describing this provision as a "passing reference to" and "mere mention[ ] of" the pension plan). The agreement in *Waukesha* made a similarly limited reference to the plan that contained the disputed terms. *See Waukesha*, 17 F.3d at 198 (noting the only relevant language in the CBA to be: "The Company will continue to provide the present employee insurance coverage . . . as specified in the Summary Plan Booklet").

In contrast, the CBA here provides a specific right to Union members, namely the right to receive the Thirty and Out benefit upon reaching the requirements of § 13.01. So the Union's allegation that the Company has denied employees their right to the Thirty and Out benefit depends on the terms of § 13.01 of the CBA. *See United Steelworkers of Am. v. Rohm & Haas Co.*, 522 F.3d 324, 332-35 (3d Cir. 2008) (refusing to order arbitration of a grievance about disability benefits where the CBA contained "no specific language addressing the employees' rights to disability benefits," and "[t]he employees' right to receive disability benefits instead derive[d] from the Plan"). Unlike the parties in *Waukesha* and *Nabisco*, the parties here negotiated the provision of the Thirty and Out benefit into the CBA, thereby showing an intent to arbitrate grievances alleging the Company's denial of the benefit, not an intent to exclude such grievances from arbitration.

### 3. *Pension Plan's Dispute Resolution Procedure and Retirement Committee*

Citing a single Sixth Circuit decision, the Company argues that the Pension Plan's dispute resolution procedure demonstrates most forceful evidence the parties intended to exclude the Union's grievance from arbitration. This argument suffers from two serious flaws. First, in the case the Company cites, *United Steelworkers of Am. v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998), the court did not find most forceful evidence of an intent to exclude the relevant grievance

from arbitration. Rather, it held the CBA expressly excluded the grievance from arbitration by specifically incorporating the company's entire medical plan, including the plan's dispute resolution procedure. Second, and more importantly, this court has held that a mere passing reference to an ERISA plan in a CBA does not incorporate the plan into the CBA. *Local 232, Allied Indus. Workers v. Briggs & Stratton Corp.*, 837 F.2d 782, 786-87 (7th Cir. 1988); *Nabisco*, 833 F.2d at 105. The *Commonwealth Aluminum* court only held that the medical plan's dispute resolution procedure expressly excluded arbitration because the court found the relevant CBA had incorporated the entire medical plan. Here, the only arguable incorporation of the Pension Plan's dispute resolution procedure is a passing reference to the Pension Plan—"[the Pension Plan] shall continue in effect" for the term of the CBA. We do not find this language incorporates the Pension Plan's dispute resolution procedure, so *Commonwealth Aluminum* is neither dispositive nor particularly instructive.

The Company also argues the existence of a retirement committee vested with the authority to administer the Pension Plan constitutes most forceful evidence the parties did not intend to arbitrate the Union's grievance. The only support the Company can muster for this argument is this court's decision in *Nabisco*. But the *Nabisco* court only mentions the existence of a "Pension Committee" in its discussion of the case's factual background. *See Nabisco*, 833 F.2d at 103. The court does, in its analysis, describe the pension plan as "all inclusive" because it provided its own grievance procedure (presumably

administered by the pension committee). But this feature of the pension plan was not critical to the court's analysis. Rather, the court emphasized the absence of any terms of the pension plan in the CBA. *See id.* at 105 (explaining that "[no] Pension Plan terms were included in the collective bargaining agreement as a result of negotiation," and that the court might have reached "a different result if Nabisco and the Union had explicitly bargained over the terms of the Pension Plan and made their agreement a part of the collective bargaining agreement"). The Pension Plan's dispute resolution procedure and the existence of the retirement committee may provide some evidence of an intent not to arbitrate, but certainly not the "most forceful evidence" required to rebut the presumption of arbitrability created by the arbitration clause. *Warrior & Gulf*, 363 U.S. at 584-85.

### III. CONCLUSION

The CBA's arbitration clause creates a presumption that the Union's grievance is arbitrable. Because the CBA does not expressly exclude the grievance from arbitration and the Company has not shown most forceful evidence of the parties' intent to exclude the grievance from arbitration, the Company has not rebutted the presumption of arbitrability. Therefore, we AFFIRM the district court's grant of summary judgment in favor of the Union, Jenkins, and Smith.