**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL #111,

      Plaintiff - Appellant,

and

DOMINGO N. MORENO; DAVID L.
WILLIAMS; GUY E. FORTI;
GERALD E. KING; VICKI
WILLIAMS,

      Plaintiffs,

v.

PUBLIC SERVICE COMPANY OF
COLORADO; XCEL ENERGY INC.
EMPLOYEE WELFARE BENEFIT
PLAN, a/k/a The Public Service Company
and Participating Subsidiary Companies
Retirees' Medical Managed Care/Medicare
Coordinated Plan,

      Defendants - Appellees.

No. 13-1207

---

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### (D.C. No. 1:12-CV-01694-PAB-MEH)

---

Ellen M. Kelman of Buescher, Kelman & Perera, P.C., Denver, Colorado (Thomas B. Buescher and Andrew H. Turner of Buescher, Kelman & Perera, P.C., Denver, Colorado, with her on the briefs) for Plaintiff-Appellant.

Charles C. Jackson of Morgan, Lewis & Bockius LLP, Chicago, Illinois (Christopher J. Boran of Morgan, Lewis & Bockius LLP, Chicago, Illinois; Lisa Hogan and William C.

Berger of Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado; Ronald E. Manthey and Ellen L. Perlioni of Morgan, Lewis & Bockius LLP, Dallas, Texas; with him on the briefs) for Defendants-Appellees.

Before **HARTZ**, **EBEL**, and **PHILLIPS**, Circuit Judges.

**PHILLIPS**, Circuit Judge.

In 2009, the Public Service Company of Colorado entered into a collective-bargaining agreement with the International Brotherhood of Electrical Workers Local #111, a union that represents some of the Company's employees. About two years later, the Company unilaterally modified its retired workers' healthcare benefits by increasing their copayment obligations for prescription drugs. The Union claimed that the Company had violated the collective-bargaining agreement by doing so and demanded arbitration. When the Company refused to arbitrate, the Union sued and asked the district court to stay the case and compel arbitration. When the district court denied that motion, the Union filed an interlocutory appeal.

This appeal presents two questions sharing a common theme: where does this case belong? The first question is whether it belongs in front of us—that is, whether appellate jurisdiction exists to hear it. We conclude that appellate jurisdiction does indeed exist under the Federal Arbitration Act. The second question is whether this case belongs in a courtroom or a conference room—that is, whether the district court should have sent the case to arbitration. We conclude that the district court properly kept the case in the courtroom because the collective-bargaining agreement's arbitration provision is not

susceptible to an interpretation that covers disputes over retired workers' healthcare benefits. Thus, we affirm the district court's order and remand the case to the district court for further proceedings.[1]

## FACTS

The Company and the Union go way back. They entered into their first collective-bargaining agreement in 1946, and they have entered into a new one every few years ever since.

In 1990, the parties signed a letter of understanding that sowed the seed for the present dispute. Among other things, the letter amended Article 11, § 3 of the 1989–1992 collective-bargaining agreement to address healthcare plans for retiring employees. Those plans touched on several topics, including retirees' copayment obligations for prescription drugs—the subject of the dispute here.

In the operative 2009–2014 collective-bargaining agreement (the "Agreement"), Article 11, § 3 references a separate plan providing for retired workers' healthcare benefits:

> For the term of this Agreement, health care benefits for employees and dependents will be provided according to the terms of the Public Service Managed Health Care Plan. Retirees' and future retirees' and their dependents' health care benefits will be provided according to the terms of the Retirees' Medical Managed Care/Medicare Coordinated Plan (M/M). Future plan changes in the Managed Health Care Plan will also be reflected in the retiree plan for individuals under age 65. These changes do not affect the medical coverage of retirees with Medical plans other than (M/M).

App. vol. 3, at 425.

---

[1] We grant the Union's motion to take judicial notice.

We pause here to describe some other provisions in the Agreement. Article 21 outlines the grievance procedure. It says that an aggrieved employee may attempt to resolve an alleged grievance either informally or through Article 21's formal grievance process—a process intended to provide "prompt, equitable and common sense adjustment of alleged grievances relating to hours, wages or conditions of employment as covered by this Agreement." *Id.* at 570.

The grievance procedure consists of three steps. At step one, a Union representative discusses an employee's alleged grievance with the employee's immediate supervisor or department head. If the grievance remains unresolved after step one, it moves to step two, where a Union committee and a Company committee attempt to resolve it. Failure at step two leads to step three, where the Union's general grievance committee and a higher-ranking Company committee attempt to resolve the dispute. If the employee's grievance remains unresolved after step three, the Union may notify the Company of its desire for arbitration.

Article 22 outlines the arbitration procedure. It says that when a dispute "relating to hours, wages, or conditions of employment, as covered by this Agreement" remains unresolved after the three-step grievance procedure, "then, and in that event, the Company and Union shall [go to arbitration]." *Id.* at 573.

In fall 2011, the Union invoked these procedures after the Company announced an increase in retired workers' copayment obligations for prescription drugs. A few weeks after the announcement, an employee, Robert Estrada, and the Union filed a step-one

grievance on behalf of both retired workers and current employees. Estrada and the Union claimed that the announced change violated Article 11, § 3 of the Agreement.

The Company denied the grievance at step one. It reasoned that because the change affected only retired workers, the dispute didn't come within the scope of the grievance and arbitration provisions, which cover only disputes over employees' hours, wages, or conditions of employment. At step two, the Company again denied the grievance, reasserting its position that the grievance and arbitration provisions didn't apply because the dispute related to retired workers' healthcare benefits, not employees' hours, wages, or conditions of employment. The Company denied the grievance at step three as well.

Having exhausted the grievance procedure, the Union sent the Company a letter demanding arbitration. The Company refused to arbitrate that part of the grievance brought on behalf of retired workers, but it expressed its willingness to arbitrate to the extent the Union was asserting a contractual violation regarding the retirement benefits of its current employees. The Union rejected the Company's offer to arbitrate on that limited basis; it wanted to arbitrate for retired workers as well.

As a result, the Union and several retired workers sued the Company in the United States District Court for the District of Colorado. The named individual plaintiffs are all retired workers who receive healthcare benefits under the MM Plan. The Union brought its first claim under 29 U.S.C. § 185(a), a provision of the Labor Management Relations Act, alleging that the Company had violated the Agreement by refusing to arbitrate. For relief on that claim, the Union asked the district court to stay the case and compel arbitration.

A few months later, the Union asked for judgment on the pleadings on its first claim. It titled the motion, "Plaintiffs' Motion for Judgment on the Pleadings and on First Claim for Relief, and Motion to Stay Proceedings Pending Arbitration." App. vol. 1, at 49. The motion asked the district court only to stay the case and compel arbitration. Not surprisingly, the Company opposed the motion, arguing that it had never agreed to arbitrate disputes over retired workers' healthcare benefits.

In the end, the district court denied the Union's motion, concluding that forceful evidence showed that the Company and the Union had not agreed to arbitrate disputes over retired workers' healthcare benefits. In short, the district court concluded that the dispute was not *arbitrable*—a term that refers to "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *BG Grp. PLC v. Republic of Argentina*, 134 S.Ct. 1198, 1206 (2014).

The Union timely filed this interlocutory appeal. Unsure about our appellate jurisdiction, we ordered the parties to brief the question. Having received that briefing, we'll discuss our appellate jurisdiction first. We'll then discuss the arbitrability issue.

## DISCUSSION

### 1. Appellate Jurisdiction

Generally, under the Federal Arbitration Act ("FAA"), if a party files a motion unmistakably seeking only an order staying the action and compelling arbitration, and the district court denies the motion, the party may take an interlocutory appeal. Here, the Union did just that: it asked for an order staying the case and compelling arbitration,

which the district court denied. We must decide whether appellate jurisdiction exists to hear the Union's interlocutory appeal from that order. We conclude that it does.

For the most part, we may review only the final decisions of a district court. *Miller v. Basic Research, LLC*, 750 F.3d 1173, 1175 (10th Cir. 2014) (citing 28 U.S.C. § 1291). The FAA, however, contains certain statutory exceptions to that general rule, permitting interlocutory appeals from some district-court orders. *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1380 (10th Cir. 2009). As relevant here, the FAA allows an interlocutory appeal from an order denying a motion to stay under 9 U.S.C. § 3. *See* 9 U.S.C. § 16(a)(1)(A). It also allows an interlocutory appeal from an order denying a motion to compel arbitration under 9 U.S.C. § 4. *See id.* § 16(a)(1)(B).

We gave these provisions an interpretive gloss in *Conrad*. There, we held that to invoke our interlocutory appellate jurisdiction under the FAA, a party must either move to stay the litigation and compel arbitration *explicitly* under the FAA or must make it plainly apparent that the party seeks only the remedies provided by the FAA. *Conrad*, 585 F.3d at 1385. Elaborating on the first option, we said that "[t]he first, simplest, and surest way to guarantee appellate jurisdiction under § 16(a) is to caption the motion in the district court as one brought under FAA §§ 3 or 4." *Id.* And elaborating on the second option, we said that "[i]f a motion denied by the district court is not explicitly styled as a motion under the FAA," then "the court should look to the relief requested in the motion. If the essence of the movant's request is that the issues presented be decided exclusively by an arbitrator and not by any court, then the denial of that motion may be appealed under § 16(a)." *Id.* at 1385–86.

*Conrad* thus stands for the general proposition that when a party files a motion unmistakably seeking only an order staying the action and compelling arbitration and the district court denies the motion, the party may take an interlocutory appeal under the FAA.

We think that's what happened here. Although the Union did not explicitly title its motion as one brought under the FAA, it did title the motion, in part, "Motion to Stay Proceedings Pending Arbitration." App. vol. 1, at 49. Faithful to that title, the motion argued that the district court should stay the case and order the parties to arbitration. It asked only for that relief. In brief, because the Union sought only an order staying the case and compelling arbitration and the district court denied the motion, we have appellate jurisdiction under the FAA to entertain this interlocutory appeal.

Yet the Company tells us things aren't quite what they seem. It says the FAA can't furnish appellate jurisdiction here because the FAA simply doesn't apply. To be clear, the Company doesn't ground its argument in the FAA's coverage provision, the gist of which is that a written arbitration provision in a contract "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Company doesn't dispute that the Agreement's arbitration provision fits within that language.

Instead, the Company makes a more sweeping argument. It contends that the FAA categorically excludes all collective-bargaining agreements. For that proposition, the Company points to 9 U.S.C. § 1, which states that the FAA doesn't apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. According to the Company, this provision

- 8 -

means the FAA categorically excludes all employment contracts—collective-bargaining agreements included. Not a bad argument, but we're unpersuaded.

To be sure, there was a time when this circuit agreed with the Company's argument. A long time ago, we stated—albeit without offering any rationale—that "[l]abor contracts are specifically excluded from the federal arbitration act." *Mercury Oil Ref. Co. v. Oil Workers Int'l Union*, 187 F.2d 980, 983 (10th Cir. 1951), *abrogated on other grounds by Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 450–51 & n.1 (1957). Nearly 40 years later, we provided the missing rationale, reasoning that the FAA excludes all labor contracts because the FAA excludes all "contracts of employment" and "[c]ollective bargaining agreements are 'contracts of employment' within the meaning of this exclusion." *United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 944 (10th Cir. 1989).

But about a decade after *United Food*, the precedential foundation for the Company's argument started to erode. In *McWilliams v. Logicon, Inc.*, we construed the FAA's exemption clause more narrowly, holding that it excludes only employment contracts for seamen, railroad employees, and other workers "actually engaged in the channels of foreign or interstate commerce." 143 F.3d 573, 576 (10th Cir. 1998). Of course, *McWilliams* stood in tension with *United Food*'s holding that the FAA categorically excludes all employment contracts.

Thankfully, the Supreme Court soon resolved this dissonance in our case law in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Vindicating the *McWilliams*

view, the Court held that the FAA excludes only employment contracts of *transportation workers* engaged in foreign or interstate commerce. *Id.* at 119.

That holding razes the Company's argument because it destroys the rationale for thinking that the FAA categorically excludes all collective-bargaining agreements. Recall the rationale: the FAA excludes all employment contracts; collective-bargaining agreements are employment contracts; therefore, the FAA excludes all collective-bargaining agreements. *Circuit City* wipes out that reasoning by wiping out the starting premise.

But *Circuit City* didn't wipe out everything: *United Food*'s holding that a collective-bargaining agreement is an employment contract remains good law. 889 F.2d at 944. So by inserting *Circuit City*'s holding into *United Food*'s formula, we can begin to see where things stand: the FAA excludes only employment contracts of transportation workers engaged in foreign or interstate commerce; collective-bargaining agreements are employment contracts; therefore, the FAA excludes only collective-bargaining agreements that cover transportation workers engaged in foreign or interstate commerce. *See Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 955–56 (7th Cir. 2012) (recognizing that the FAA excludes a collective-bargaining agreement only if the agreement covers transportation workers within *Circuit City*'s meaning).

All this adds up to a simple point: the FAA's exemption clause does not categorically exclude all collective-bargaining agreements, and we reject the Company's argument to the contrary.

Even so, the Company argues there is yet another statute that renders the FAA inapplicable to collective-bargaining agreements—29 U.S.C. § 185. Section 185 makes collective-bargaining agreements enforceable in federal courts. *See* 29 U.S.C. § 185(a). But according to the Supreme Court, the statute does a lot more than that—it authorizes federal courts to fashion a body of federal common law for enforcing collective-bargaining agreements. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 450–51, 456 (1957). And according to the Company, that body of federal common law now occupies the field for collective-bargaining agreements, thereby excluding the FAA.

We don't share the Company's view that § 185 and the FAA are mutually exclusive. Instead, we agree with the Seventh Circuit:

> Section [185] is of course more than a jurisdictional and procedural statute; the Supreme Court has held that it is a directive to the courts to create a federal common law of collective bargaining contracts. The Federal Arbitration Act has no particular reference to such contracts and so if there were a conflict between the two statutes we would resolve it in favor of section [185]. Where there is no conflict, however, and the FAA provides a procedure or remedy not found in section [185] but does not step on section [185's] toes, then, … we apply the Federal Arbitration Act.

*Smart v. IBEW, Local 702*, 315 F.3d 721, 724–25 (7th Cir. 2002) (Posner, J.) (citation omitted).

This gets us a step closer to a definitive answer on our appellate jurisdiction, but not all the way home. As a final step, we need to know whether the FAA's interlocutory-appeal provisions clash with anything in § 185 or its attendant federal common law. And there again we're in accord with the Seventh Circuit's conclusion that the answer is no: "whether a particular type of interlocutory order is immediately appealable . . . is a

quintessentially procedural question to which the Federal Arbitration Act provides an answer that creates no tension with anything in either [§ 185] or the common law of collective bargaining agreements that has evolved under it . . . ." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 359 (7th Cir. 1997) (Posner, C.J.).

Pulling this discussion together, we hold the following: *if* (1) a collective-bargaining agreement contains a written arbitration provision covered by 9 U.S.C. § 2; (2) the agreement does not cover transportation workers engaged in foreign or interstate commerce; (3) a party to the agreement files a motion unmistakably seeking only an order staying the case and compelling the parties to arbitration; and (4) the district court denies the motion—*then* appellate jurisdiction exists under 9 U.S.C. § 16(a) to hear an interlocutory appeal from that order.

Here, no one disputes that the Agreement contains a written arbitration agreement covered by 9 U.S.C. § 2. Moreover, no one contends that the employees covered by the Agreement are transportation workers within *Circuit City*'s meaning. And as demonstrated above, the Union filed a motion unmistakably seeking only an order staying the case and compelling arbitration, and the district court denied that motion. Thus, we conclude that appellate jurisdiction exists under the FAA to hear the Union's interlocutory appeal from the district court's order.

## 2. Arbitrability

When a collective-bargaining agreement contains an arbitration provision and a dispute arises between the parties to the agreement, a court should send the dispute to

arbitration unless it can say with positive assurance that the arbitration provision is not susceptible to an interpretation that covers the dispute. The question here is whether we can say as much about the Agreement's arbitration provision and this dispute over retired workers' healthcare benefits. We think we can.

The Supreme Court has held that when a collective-bargaining agreement contains an arbitration provision, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted); *see id.* at 654–55 (Brennan, J., concurring). This rule reconciles the principle that "a party cannot be required to submit to arbitration any dispute [that] he has not agreed so to submit," *id.* at 648, with the federal policy and presumption favoring arbitration in the labor context, *id.* at 650–51.

Here, we don't think the Agreement's arbitration provision is susceptible to an interpretation that covers disputes over retired workers' healthcare benefits. Instead, we think Supreme Court precedent and well-established principles of construction show that the arbitration provision covers only disputes over the hours, wages, or employment conditions of *employees*.

We start with Supreme Court precedent. In *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, the Supreme Court said that "wage[s]," "hours," and "working conditions" are words that refer to employees—i.e., they are "terms of *active employment*." 404 U.S. 157, 173 (1971) (emphasis added). In fact, in the same breath the

Court indicated that these words do not refer to retired workers. *Id.* That's significant because the arbitration provision here uses those same words, stating that it applies to disputes over "hours, wages, or conditions of employment." App. vol. 3, at 573. While *Allied Chemical* was interpreting the term "employee" in the National Labor Relations Act, the court did so by examining and applying the ordinary meaning of the words and concepts involved. So by putting *Allied Chemical* and the arbitration provision together, we're left with a firm impression that the provision covers only disputes relating to *employees*' hours, wages, or conditions of employment, not disputes relating to retired workers' healthcare benefits.

The *ejusdem generis* canon reinforces this interpretation. The canon holds that "[w]here general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012); *see Black's Law Dictionary* 594 (9th ed. 2009) (defining *ejusdem generis*). Again, the arbitration provision here covers disputes over "hours, wages, or conditions of employment, as covered by this Agreement." App. vol. 3, at 573. Because hours and wages relate only to employees, the *ejusdem generis* canon suggests that the phrase *conditions of employment* relates only to employees as well. Thus, the *ejusdem generis* canon also suggests that the arbitration provision covers only disputes over employees' hours, wages, or conditions of employment, not disputes over retired workers' healthcare benefits.

The ordinary-meaning canon further reinforces this interpretation. Under that canon, if context indicates that words bear a technical legal meaning, they are to be understood in that sense. Scalia & Garner, *supra*, at 69, 73. In the labor context, the phrase *hours, wages, or conditions of employment* does bear a technical legal meaning; it refers to the mandatory subjects of collective bargaining under the National Labor Relations Act. *See Allied Chem.*, 404 U.S. at 163–64. So the parties' use of the phrase suggests that they agreed to arbitrate only disputes over mandatory subjects of collective bargaining. *See* Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it."). But the Supreme Court has held that retiree benefits are *not* a mandatory subject of collective bargaining. *Allied Chem.*, 404 U.S. at 176–82. That bolsters the conclusion that the arbitration provision doesn't cover disputes over retired workers' healthcare benefits.

In brief, Supreme Court precedent and well-established interpretive principles give us positive assurance that the arbitration provision is not susceptible to an interpretation that covers this dispute.

The Company and the Union dedicate many pages to fighting about *who* may invoke the Agreement's arbitration procedure. The Company argues that only employees may do so. The Union counters by pointing to a previous case between the parties in which the district court sent a Company-initiated grievance to arbitration. *See Pub. Serv. Co. of Colo. v. IBEW, Local Union No. 111*, No. 93-K-2127, slip op. at 1–5 (D. Colo. Dec. 1, 1993).

For our purposes, however, *who* may invoke the arbitration procedure is not as important as *what* the dispute must be about. As shown above, the universe of arbitrable grievances under the arbitration provision includes only disputes over employees' hours, wages, or conditions of employment. And this dispute simply doesn't fit within that universe. Put another way, what takes this dispute outside the arbitration provision is not necessarily that it's a retired-worker grievance as opposed to an employee grievance, but that it's a dispute over retired workers' healthcare benefits as opposed to one over employees' hours, wages, or conditions of employment.

The Union resists our conclusion with two arguments. First, it argues that the district court failed to properly apply the presumption in favor of arbitrability. We disagree. The district court correctly recited the law when it stated that "[i]n the labor relations context, a presumption in favor of arbitration applies" and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." App. vol. 1, at 157. Further, the district court's analysis demonstrates fidelity to that legal framework. As a result, we can't agree that the district court failed to apply the law properly.[2]

---

[2] The dissent cites *Crown Cork & Seal Co. v. International Association of Machinists*, 501 F.3d 912, 919 (8th Cir. 2007), for the proposition that a similar provision has been interpreted to mean that the parties had agreed to arbitrate disputes over retiree benefits. However, in *Crown Cork & Seal Co.*, the Eighth Circuit ultimately concluded that the contract did not even cover the retiree benefits, and thus, they were outside the scope of the agreement and not subject to arbitration at all. Its discussion of whether the parties agreed to arbitrate the retiree benefits is consequently mere dictum. Even further, the court did not supply any justification or rationale for its conclusion that retiree benefits fell within the scope of the agreement. The dissent also relies on two Seventh Circuit cases—*Printing Specialties & Paper Products Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987), and *Local 232, Allied Industrial Workers v. Briggs & Stratton Corp*, 837 F.2d 782 (7th Cir. 1988). But we fail to see how those cases shed any

Second, the Union argues that the district court erred because it addressed the underlying merits of the dispute. Again, we disagree. We recognize that as a general rule, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs.*, 475 U.S. at 649. But the district court noted that rule here, and contrary to the Union's argument, we don't think the district court transgressed it. Recall that the underlying claim here is for breach of contract; the Union claims that the Company violated Article 11, § 3 of the Agreement by unilaterally changing retired workers' healthcare benefits. Had the district court truly addressed the merits, we'd expect to see a discussion of the Company's merits-based response—i.e., that the MM Plan gives the Company the right to "modify, alter, or amend" the MM Plan at any time. Appellees' Br. at 4 (citing App. vol. 3, at 640). Yet the district court's order doesn't contain any discussion along those lines, which indicates that the district court did not in fact address the underlying merits.

But even assuming the district court did touch on the merits, we still would not have grounds for reversal. We have held that "where the merits of the claim are bound up with the question of arbitrability," "the court's duty to determine whether the party intended

_____

light on this arbitration agreement because neither one involved a dispute over retired workers' benefits. We do not find the cases cited by the dissent persuasive and decline to follow them here. We think that *Allied Chemical*, the *ejusdem generis* canon, and the ordinary-meaning canon all conspire to suggest that "conditions of employment," as used in the Agreement, doesn't encompass *all* bargained-for benefits covered by the Agreement. Rather, "conditions of employment" encompasses only those benefits enjoyed by *employees*, not retired workers.

the dispute to be arbitrable trumps its duty to avoid reaching the merits." *Commc'n Workers v. Avaya, Inc.*, 693 F.3d 1295, 1300 (10th Cir. 2012). Here, the district court devoted its entire discussion to answering the arbitrability question, so any incidental contact with the merits didn't amount to a foul.

## CONCLUSION

We conclude that the FAA supplies appellate jurisdiction to hear this interlocutory appeal. We further conclude that the district court correctly denied the Union's motion to stay the case and compel arbitration because the Agreement's arbitration provision is not susceptible to an interpretation that covers this dispute over retired workers' healthcare benefits. We therefore affirm the district court's order and remand the case to the district court for further proceedings.

13-1207 – *IBEW v. Public Service Co.*

**HARTZ,** Circuit Judge, concurring and dissenting:

I agree fully with Judge Phillips's cogent discussion of our appellate jurisdiction. I must respectfully dissent from the majority, however, on their resolution of the arbitrability issue. In my view, the presumption of arbitrability has not been overcome.

As the Supreme Court has instructed, if a collective bargaining agreement (CBA) contains an arbitration clause, there is a presumption that disputes should be submitted to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). If the arbitration clause is broad, the presumption in favor of arbitrability is strong and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (internal quotation marks omitted).

The grievance-procedure section in the CBA before us provides for the "adjustment of alleged grievances relating to hours, wages or conditions of employment as covered by this Agreement." Article 21, ¶ 2. The arbitration section provides for arbitration of any dispute "relating to hours, wages, or conditions of employment, as covered by this Agreement, which shall not be settled through the grievance procedure." Article 22, ¶ 1.

The majority opinion concludes that this language is not "susceptible to an interpretation that covers disputes over retired workers' healthcare benefits." Op. at 14. It relies on the Supreme Court's opinion in *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 (1971), which held that an employer's unilateral modification of retired employees' retirement benefits is not an unfair labor practice under the National Labor Relations Act (NLRA). The Court said that for purposes of the mandatory-bargaining provisions of the NLRA, retirees are not "employees," *see id.* at 166–76, and pensioners' benefits are not "terms and conditions of employment," *see id.* at 177–82. But the Court did not purport to hold that the quoted words always have those meanings in the context of labor relations. For example, the Court noted that retired workers are *employees* within the meaning of the term in another provision of the NLRA. *See id.* at 169–70. And much of the opinion is devoted to discussion of the policies underlying the mandatory-bargaining requirements of the NLRA, a discussion that would have been unnecessary if the language at issue always had the same meaning in labor law and CBAs. Of particular importance, the Court made clear that something that is not a mandatory subject of bargaining may still commonly be a subject that employers and employees decide to bargain over, *see id.* at 175–76, 181 n.20; and one can infer that the meaning of "terms and conditions of employment" could expand with the scope of bargaining.

In short, although the *Allied Chemical* opinion is certainly an important consideration, the context here is rather different from what confronted the Supreme

Court, and we are interpreting a CBA, not the NLRA. Our task is to determine the meaning of the term *conditions of employment* in the CBA.

The first occurrence of the term is in Article 1, ¶ 3, which provides that the CBA "shall embody general working rules, hours of work, rates of pay, grievance procedure, method of arbitration, *and other conditions of employment as hereinafter outlined*." (emphasis added). One could readily infer from this language that any benefit or burden "outlined" in the CBA is one of the listed items—that is, it is a "condition[] of employment." In other words, when the CBA uses the term *conditions of employment*, it is including any subject addressed in the CBA. Two CBA provisions are particularly relevant. Article 11 (entitled "Other Employee Benefits"), ¶ 1 states that "benefits heretofore enjoyed by employees covered by this Agreement, *such as retirement benefits*, . . . shall continue subject to collective bargaining in the future under this Agreement." (emphasis added). And Article 11, ¶ 3, states that "Retirees' and future retirees' and their dependents' health care benefits *will be provided* according to the terms of the Retirees' Medical Managed Care/Medicare Coordinated Plan (M/M)." (emphasis added). Because the CBA addresses retiree benefits, the arbitration provision covering grievances "relating to . . . conditions of employment," Article 21, ¶ 2, would appear to apply to grievances concerning compliance with the CBA requirements for retiree benefits, the subject matter of the grievance here. In my view, the Supreme Court's opinion in *Allied Chemicals* is not enough in itself to provide "forceful evidence" that the claim here is excluded from arbitration.

I read the limited appellate case law on the matter as supporting my view. Although ruling on other grounds that a dispute was not arbitrable, the Eighth Circuit stated in *Crown Cork & Seal Co. v. International Ass'n of Machinists & Aerospace Workers*, 501 F.3d 912 (8th Cir. 2007), that a nearly identical arbitration clause encompassed disputes over retiree health benefits. *See id.* at 915. Crown had agreed to provide health benefits for retirees, but it decided to unilaterally modify them. *See id.* at 913. The union sought to compel arbitration. *See id.* at 914. The CBA provided for arbitration of "any difference between the Local Management and the Union or employees as to the interpretation or application of, or compliance with, the Master Agreement respecting *wages, hours, or conditions of employment*." *Id.* at 915 (emphasis added) (brackets and internal quotation marks omitted). The Eighth Circuit agreed with Crown that "retirees are outside the collective bargaining relationship" under *Allied Chemical. Id.* (internal quotation marks omitted). But it also noted that unions can represent retirees, and it concluded that the language in the arbitration clause showed that Crown and the union had agreed to arbitrate disputes over retiree health benefits. *See id.*

The Seventh Circuit has two contrasting cases that are also instructive. In *Printing Specialties & Paper Products Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987), the dispute concerned whether the sale of a plant constituted a "job termination" that entitled some employees to a special early-retirement benefit in the company pension plan, *see id.* at 105. The CBA had an arbitration clause with language very similar to the clause in our case, requiring arbitration for "any grievance or misunderstanding involving

- 4 -

wages, hours or working conditions, which any employee may desire to discuss and adjust with the Company." *Id.* at 103 (internal quotation marks omitted). The court held that the dispute did not come within the arbitration clause. *See id.* at 105.

In contrast, however, in *Local 232, Allied Industrial Workers v. Briggs & Stratton Co.*, 837 F.2d 782 (7th Cir. 1988), the court ordered arbitration of the union's claim that the company had violated the CBA by making unilateral changes in its retirement plan, *see id.* at 783. The arbitration clause was broader than the one in *Nabisco*, providing that "all grievances between the two parties shall be deemed arbitrable." *Id.* at 785 (internal quotation marks omitted). But the court did not distinguish *Nabisco* on that ground. Rather, the "critical distinction," wrote the court, "relate[d] to the underlying issue in dispute in each case." *Id.* at 787. In *Nabisco* the dispute was over the meaning of a term in the plan, rather than a change in the terms of the plan, so the dispute was unrelated to the company's agreement in the CBA to continue the plan. *See id.* But in *Local 232*, the union's complaint that the company had changed the terms of the plan "focuse[d] on the one aspect of the retirement plan that [was] specifically addressed in the [CBA]— maintaining the plan." *Id.* The court noted that it had said in *Nabisco* that if the company had "failed to fulfill an obligation under the collective bargaining agreement which abrogated the full force and effect of the Pension Plan, such as failing to fund the Plan adequately or eliminating the Plan altogether, the result would have been different." *Id.* (internal quotation marks omitted). But even though in *Local 232* the company's "amendments to the retirement plan are not identical to these examples, yet the changes

arguably still constitute a failure to maintain the plan," and "[r]esolution of this issue [determining whether the company had maintained the plan] is not our task," but is one for the arbitrator. *Id.* at 788. I would conclude from this that the Seventh Circuit would construe our arbitration clause to encompass the union's claim.

In sum, I am persuaded that the arbitration clause before us is susceptible to the interpretation that it covers this dispute. Given that other circuit courts have said that they would interpret similar arbitration provisions to encompass similar disputes, I would apply the presumption in favor of arbitrability and submit this dispute to arbitration.